Douglas MILLER, Appellant,

v.

STATE of Alaska, Appellee.

No. A-7333.

Court of Appeals of Alaska.

Feb. 9, 2001.

Marcia E. Holland, Assistant Public Defender, Fairbanks, and Barbara K. Brink, Public Defender, Anchorage, for Appellant.

John A. Scukanec, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

## OPINION

COATS, Chief Judge.

While investigating a fire of suspicious origins, the police questioned suspect Douglas Miller. Miller denied involvement in the fire. After the police assured Miller that if he started the fire by accident it was "not that big a thing" and would be "an over and done deal," Miller admitted that he had set fire to a block of insulation but thought he had fully extinguished it. The state charged Miller with arson for setting the fire and he was convicted. We conclude that Miller's statement to the police was involuntary because it was induced by an implied promise not to prosecute Miller for a serious offense if he started the fire by accident. Further, we conclude that the jury may have convicted Miller even if it substantially believed his account of how the fire started, an account consistent with a reasonable understanding of "accident." We therefore reverse Miller's convictions.

Douglas Miller was residing without permission in a vacant warehouse in Fairbanks. On July 26, 1998, the warehouse caught on fire and the lower portion was extensively burned. The upstairs office was not burned. A witness to the fire observed Miller standing near the warehouse.

Deputy Fire Marshall Andrew F. Garcia determined that the fire had originated above the bumper of a bus that was located in the warehouse. The fire had then spread to the warehouse.

That night, Fairbanks Police Department Detective Leonard C. Brown interviewed Miller at the police station. During that interview, the police told Miller that he was free to leave at any time. Miller denied involvement with the fire. At the end of the interview at the station, Detective Brown drove Miller back to the warehouse to look for his belongings. Detective Brown went into the warehouse and saw two drawings and graffiti in the upstairs office. Detective Brown asked Miller if he was responsible for the drawings, and Miller said he was.

The next day, Miller was hitch-hiking on the Johansen Expressway in Fairbanks. Eric Engman, a photographer for the Fairbanks News Miner, pulled up to photograph Miller. After photographing Miller, he offered Miller a ride. Before Miller took the ride, Detective Brown and Fairbanks Police Department Detective Aaron Ring arrived in an unmarked car. They pulled up between Miller and Engman's car. The detectives began to interview Miller. The detectives told Miller he was not under arrest. They did not tell Miller that he was free to leave.

After a few minutes, Detective Ring went over to Engman. Detective Ring identified himself and asked who Engman was. Engman told Ring that he was a photographer and that he was considering giving Miller a ride. Detective Ring left Engman, but came back a few minutes later. Ring told Engman that Miller had a criminal record and they needed to talk to Miller. Ring said that he would suggest that Engman not give Miller a ride. Miller did not hear what Ring said to Engman. Engman left without Miller.

The police interviewed Miller for approximately forty-five minutes on the expressway. During the interview, the police assured Miller that if he started the fire accidently "[I]t's not that big a thing ... not that big a thing at all." They told him if starting the fire was an accident, "[i]t's done with. It's an over and done deal." They assured Miller that they were not there to arrest him. After these assurances, Miller told the police that he had burned some foam insulation to turn it into a piece of artwork. He had then poured catsup on the insulation to make sure it was out. He said he had put the insulation up against the bus. He said he had no intention of setting the bus or the building on fire.

At the end of the interview, Miller asked the detectives to clear up the situation by calling the district attorney. Detective Brown did so and was told to arrest Miller. The detectives did. The detectives had not previously planned to arrest Miller.

The next day, Miller called Detective Ring. Miller told Ring that he didn't have anything to do with the fire. Miller said that he had flicked a cigarette into a pile of paper and had not checked on it, and maybe that was how the fire started.

Miller was charged with two counts of first-degree arson, one count of second-degree arson, and one count of criminal trespass. Before trial, Miller moved to suppress his confession on the ground that he was in custody when he made his statements to the police and that the police had not warned him of his rights, thereby violating *Miranda v. Arizona*.[1] He also argued that his statement was involuntary because the police had obtained his statement by representing that they would not prosecute him for accidently starting a fire. After an evidentiary hearing, Superior Court Judge Niesje J. Steinkruger found that Miller had been placed in *Miranda* custody only after the detective finished speaking with the district attorney. Judge Steinkruger therefore suppressed only the statements Miller made to the police after that time. Judge Steinkruger found that Miller's confession was voluntary.

Superior Court Judge pro tem Jane F. Kauvar conducted Miller's jury trial. The jury convicted Miller of one count of first-degree arson, two counts of criminally negligent burning, and one count of criminal trespass. Judge Kauvar ruled that the counts of criminally negligent burning merged with the count of first-degree arson, and sentenced Miller to five years in prison plus a thirty day suspended sentence. This appeal followed.

Miller contends that Judge Steinkruger erred in refusing to suppress the statement that he made to Detectives Brown and Ring when they questioned him beside the Johansen Expressway because he was in custody and the police officers did not give him *Miranda* warnings.

█ In *Hunter v. State*,[2] the Alaska Supreme Court adopted a reasonable person objective test for determining whether a per-

---

**1.** 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

**2.** 590 P.2d 888 (Alaska 1979).

son was in custody.[3] Custody occurs when there is "some actual indication of custody, such that a reasonable person would feel he was not free to leave and break off police questioning."[4]

In arguing that he was in custody, Miller points out that the police sent away his ride, that although he was told he was not under arrest, he was never told he was free to go, and that he was arrested following the interview.

In ruling against Miller, Judge Steinkruger found that the interview occurred in the middle of the afternoon beside the Johansen Expressway. The officers were in an unmarked car and were not in uniform. The police never placed Miller under any restraint and repeatedly told Miller that he was not under arrest and that they would give him a ride if he needed one. She pointed out that the police had previously questioned Miller and had given him a ride to where he wanted to go at the conclusion of the interview. Although the police did arrest Miller at the conclusion of the most recent interview, she found that the evidence showed that this was not their original intent. The police arrested Miller only because he asked them to call the district attorney's office to clear up his situation. When the police called the district attorney's office, they were directed to arrest Miller.

■ We conclude that Judge Steinkruger's findings are supported by the record and support her decision that Miller was not in custody until he was arrested at the direction of the district attorney's office. Officer Brown had previously questioned Miller, giving him a ride to where he wanted to go at the conclusion of the interview. Judge Steinkruger could reasonably conclude that both the police and Miller would have reasonably believed that this scenario would repeat itself. The officers constantly assured Miller that he was not under arrest and told him that if he had accidently started the fire it

was not a "big deal." She could also reasonably conclude that Miller's action of directing the police to call the district attorney's office to clear up the situation demonstrated that Miller did not act as though he was in custody.

Miller next contends that Judge Steinkruger erred in determining that his statement was voluntary. Miller points out that the police made statements to him that suggested that he would not be prosecuted if he started the fire by accident. He argues that he confessed to the police only because he had been assured he would not be in trouble for a fire started by accident.

■ In determining whether a confession is voluntary, we review the trial judge's findings of historical fact deferentially and overturn those findings only if they are clearly erroneous.[5] But in determining the defendant's mental state and its legal significance, we independently examine the record and base our conclusion about whether the statement is voluntary upon the totality of the circumstances surrounding the confession.[6] Among the circumstances courts consider in determining the voluntariness of a confession are "the age, mentality, and prior criminal experience of the accused; the length, intensity and frequency of the interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement."[7] In this case, the primary circumstance that we must consider is whether the promises and inducements that the police offered were sufficient to make Miller's statement involuntary. Not all statements obtained by promises or trickery are involuntary. The supreme court has stated:

> We have thus expressly "reject[ed] a per se rule which would condemn any incriminatory statement obtained by means of a promissory inducement," and have instead adopted a "totality of circumstances" approach in examining the voluntariness of

3.  See id. at 894–95.

4.  Id. at 895.

5.  See Aningayou v. State, 949 P.2d 963, 966 (Alaska App.1997).

6.  See Beavers v. State, 998 P.2d 1040, 1044 (Alaska 2000).

7.  Sprague v. State, 590 P.2d 410, 414 (Alaska 1979), quoting Brown v. United States, 356 F.2d 230, 232 (10th Cir.1966).

an accused's confession. We have employed this multi-factor analysis even when police have engaged in improper conduct to induce confessions, and we have affirmed the voluntariness of inculpatory statements induced by police trickery and misrepresentation of evidence.[8]

Miller relies on *Smith v. State.*[9] In *Smith,* the state troopers were investigating a single car accident. The driver of the car was not present at the scene, but the troopers learned that Smith was the owner. The troopers located Smith, who denied driving. Smith agreed to go to the accident scene to take care of his car.[10] At the scene, a state trooper told Smith that he suspected that Smith was the driver because he had been drinking and had a bump on his forehead. But he assured Smith that he was "not interested in prosecuting anyone for drunk driving" but only wanted to find out who had been driving. Smith immediately confessed that he had been the driver.[11] The state prosecuted Smith. Smith filed a motion to suppress his confession on the ground that his statements were not voluntary because they had been induced by a promise to not prosecute him. The trial court denied Smith's motion to suppress. Smith was ultimately convicted of driving while his license was revoked and reckless driving.[12]

On appeal, Smith contended that the trial court erred in denying his motion to suppress.[13] We agreed with Smith that his statement was involuntary and therefore inadmissible:

Here, Smith found himself in a situation which, although arguably not actually custodial, was at least quasi-custodial. When confronted by the police in the setting, his initial response was to deny involvement. The police thereafter expressly assured Smith that they were seeking information for limited purposes and had no interest in pursuing a charge of DWI against him. Smith's confession followed directly on the heels of this assurance. Under the circumstances, we hold that Smith's confession was plainly induced by the promise of leniency and must consequently be deemed involuntary.[14]

As we have previously stated, however, not all statements induced by promises are involuntary. For instance, in *Chase v. State,*[15] Chase was under investigation for the murder and first-degree sexual assault of a young woman.[16] The police officer investigating the offense questioned Chase because he had been at a party at the victim's house on the night of the murder. When Chase asked the officer if his statements could lead to a charge of statutory rape, the officer replied that he was investigating the murder and that he was not going to charge Chase for having had sexual contact with the young woman.[17] After Chase confessed to murder, he contended that his statements had been induced by the officer's promises. This court upheld the trial judge's ruling that Chase's statements were voluntary because it was clear that the officer's promises were limited to not charging Chase for statutory rape, not the more serious murder and forceful rape charges.[18]

In the instant case, the officers assured Miller that they were not there to arrest him and that it was "no big deal" if he started the fire accidentally. However, they also told him that it would be another matter entirely if he had intentionally started the fire. Miller admitted that he intentionally burned the insulation block and put the block up against the bus. But Miller also explained that he had put catsup on the block to extinguish the fire and had believed it was out.

8. *Beavers,* 998 P.2d at 1045 (citations omitted).

9. 787 P.2d 1038 (Alaska App.1990).

10. *See id.*

11. *See id.* at 1038–39.

12. *See id* at 1039.

13. *See id.*

14. *Id.*

15. 678 P.2d 1347 (Alaska App.1984).

16. *See id.* at 1349.

17. *See id.* at 1355.

18. *See id.*

We assume that if the state had charged and prosecuted Miller with intentionally setting fire to the bus or building, Miller's statements would be considered voluntary if admitted in support of those charges. However, it appears from the way that the state presented the charges at trial that the jury could have found Miller guilty based upon his account that he accidently started the fire.

Miller was convicted of one count of arson in the first degree. The indictment for arson in the first degree charged that Miller did "intentionally damage property, insulation blocks and/or the building and/or contents at 2150 Phillips Field Road, by starting a fire ... and by that act recklessly placed ... fireman Pat Meade ... in danger of serious physical injury."[19] The jury instructions tracked the indictment. At trial, the prosecutor's main contention was that Miller had intentionally set fire to the bus. But, in argument, the prosecutor pointed out that Miller had admitted intentionally burning the insulation block and that this was sufficient to show that he had intentionally damaged property. Thus the jury did not have to find that Miller intentionally set fire to the bus to convict Miller of arson in the first degree. The jurors could have convicted him based on his admission to the officers that he set fire to the insulation block.

Miller was also charged with arson in the second degree for intentionally setting fire to the building. The jury acquitted Miller on this charge, convicting him of the lesser offense of criminally negligent burning. Thus the jury acquitted Miller of the one charge that required it to find that he set fire to anything but the insulation block intentionally.

Because the jury did not convict Miller of intentionally setting fire to the building and did not necessarily conclude that Miller intentionally set fire to the bus, we are unable to tell if the jury concluded that Miller intentionally set fire to anything besides the insulation block. Therefore, Miller could well have been convicted of these charges based upon his statement that he had intentionally burned the insulation block but the larger fire was an accident.

In this case, we believe that *Smith* is controlling. Several times during his interrogation, the police made statements that suggested that Miller would not be in any trouble if he had accidently started the fire. They implied to Miller that if the fire was accidental they would not arrest him and that it would be "not that big a thing" and "an over and done deal." Although originally denying several times that he had anything to do with the fire, after these inducements Miller admitted that he had burned a piece of foam insulation to turn it into a piece of artwork. He admitted that he had placed this insulation over by the bus but also stated that he had thoroughly doused the insulation with catsup so that he believed that it had been extinguished. But he suggested that the fire could possibly have started from the insulation. Miller's account can reasonably be understood as describing an accident. Since the police essentially told Miller that he would not be prosecuted for accidentally starting the fire, we conclude that the officers offered an improper inducement for Miller's statements and that the statements are involuntary.[20] We therefore conclude that the court erred in failing to suppress these statements. Since the convictions against Miller were obtained through use of these statements, we reverse Miller's convictions.

The convictions are REVERSED.

---

**19.** Miller was acquitted of a second count of arson in the first degree, which involved another person.

**20.** *See State v. Burr,* 126 Ariz. 338, 615 P.2d 635 (1980); *State v. Tamerius,* 234 Neb. 121, 449 N.W.2d 535 (1989) (promise to not arrest equivalent to promise to not prosecute).