HILL, Chief Justice.
 

 [¶1] James Charles Watters (Watters) appeals a conviction for first-degree sexual assault for the infliction of sexual intrusion on a victim, his foster daughter (TD), whom he knew or reasonably should have known was incapable of appraising the nature of her conduct because of a mental illness, deficiency or developmental disability. Watters alleges error in the failure of the trial court to require the presence of the victim at a taint hearing, in finding the victim competent to testify, in admitting photographs of explicit sexual conduct between him and the victim pursuant to W.R.E. 404(b), and in excluding evidence of the victim's prior sexual activity with persons other than him. He also claims an abuse of discretion in the term of sentence imposed. Finding no error, we affirm.
 

 ISSUES
 

 [¶ 2] In his brief, Watters sets forth five issues:
 

 I. Whether the trial court erred in not requiring the victim, TD, to be present for a taint hearing?
 

 II. Whether the trial court erred in finding TD competent to testify at trial?
 

 III. Whether the trial court erred in allowing evidence under W.R.E. 404(b)?
 

 IV. Whether the trial court erred in refusing to allow evidence pertaining to the prior sexual activity of TD, thus prohibiting [Watters] from fully presenting his defense of capacity to consent?
 

 V. Whether the trial court abused its discretion in sentencing [Watters] to 24 to 34 years in the Wyoming State Poeni-tentiary for this crime?
 

 The State substantially concurs with Wat-ters' statement of the issues.
 

 FACTS
 

 [¶ 3] TD suffers from severe mental and developmental disabilities She has a full scale Intelligence Quotient of 59. TD is unable to live by herself because she needs constant supervision in order to properly perform even basic life skills such as personal hygiene. Her condition is severe enough that she is qualified for a Medicaid waiver and other social services. TD was nine or ten years old when she went to live with a foster family, the Watters, in Glenrock, Wyoming. She lived with Watters, who was a police officer, and Watters' wife Denise and their four biological children. TD lived with the Watters family until she turned twenty-one years old, when she moved into the Options Group Home in Casper, Wyoming. Watters and his wife were appointed guard
 
 *908
 
 ians and conservators for TD after she turned twenty-one.
 

 [¶4] In April of 2002, Watters and his wife separated, and he moved out of the marital home. On April 20th, Denise Wat-ters discovered photographs on their computer that explicitly depicted Watters and TD engaging in sexual conduct. She reported the discovery to her daughter, whose husband was a Casper police officer. The computer hard drive was turned over to the police.
 

 [¶5] Four days later, Watters visited TD at the group home. Upon seeing Watters approach the house, TD ran to her basement bedroom. TD was "seared that he was going to do something" but she failed to lock the door to her bedroom. Watters entered the bedroom, told TD to remove her pants, and engaged in sexual intercourse with her. Watters and TD then went upstairs, and he obtained permission from the group home supervisor for TD to go with him to pick up a washing machine. Watters and TD left the group home in his truck. After picking up the washing machine, Watters dropped TD off at Liberty Baptist Church, where the group home supervisor said she would meet TD. However, the group home supervisor was unable to go the church, so TD was returned to the group home by the pastor's wife. Immediately after TD returned to the group home, she called her mother and informed her of what Watters had done.
 

 [T6] Watters subsequently was charged with one count of first-degree sexual assault in violation of Wyo. Stat. Ann. § 6-2-302(a)(iv) (LexisNexis 2003)
 
 [1]
 
 and, in the alternative, one count of second-degree sexual assault in violation of Wyo. Stat. Ann. § 6-2-303(a)(vi) (LexisNexis 2003).
 
 [2]
 
 After a jury trial, Watters was convicted on the first-degree sexual assault charge.
 
 [3]
 
 Watters was sentenced to a term of not less than 288 months nor more than 408 months in the State penitentiary.
 

 [v7] Additional facts will be noted in our discussion below as relevant to the specific issues raised by Watters.
 

 DISCUSSION
 

 The Victim's Presence at Taint Hearing
 

 [¶ 8] Prior to trial, Watters moved for a competency and a taint hearing pursuant to Larsen v. State, 686 P.2d 583 (Wyo.1984) and Alicea v. State, 18 P.3d 698 (Wyo.2000). The district court granted the motions and scheduled a combined competency/taint hearing for September 9, 2002. On September 6th, Watters filed a motion to continue the taint portion of the hearing stating that he had been unable to locate two police officers and serve them with subpoenas. Watters presented that motion orally to the district court at the commencement of the September 9th hearing. The district court ruled that it would proceed with the competency hearing and continue the taint part of the hearing to September 18th. The court stated, however, that any evidence or argument related to the question of taint could be presented during the competency hearing if a party desired. Neither party presented any evidence related to taint during the competency hearing. The district court concluded that TD was competent to testify subject to consideration of the evidence on how any taint may have
 
 *909
 
 affected her ability to testify truthfully at trial.
 

 [¶9] The taint hearing resumed on September 13th. At the outset, Watters complained that the victim, TD, was not present and that he needed her testimony. The district court noted that it did not want to reschedule the taint hearing again because the trial was set for the following Monday, September 16th. The court further noted that TD had been present in court for the competency hearing, and Watters had made no mention that he needed her testimony at the taint hearing:
 

 But my view of what was initially set by me was the competency portion of what I said I would hold as a joint hearing. I ordered that [TD] be here on the 9th [for the competency hearing]. She was here. She participated with my inquiry of her on the record. And after that, I was ready, willing, and able to undertake hearing on other evidence the defense may have. There was no mention of the need for her as a witness on that day, or we could have proceeded. I presume that in granting the defense motion for a continuance, that if they needed to have her here as a witness today, they needed to have her here by subpoena, by stipulation of [the prosecutor], by some other process. And I don't think I can continue the hearing any further, because we've got to start the trial up on Monday morning. And I don't even hear a request for continuance. I'm not sure what the request really is that I'm being asked to rule on.
 

 Watters requested a continuance at that point but the district court did not rule on the motion and proceeded with the hearing. At the conclusion of the hearing, Watters' counsel stated that he had no more evidence to produce. The court then ruled that there was no evidence showing that TD had been tainted.
 

 [¶ 10] Watters argues that the district court erred by not granting his motion to require the victim's presence at the taint hearing. He contends that the very nature of the hearing-to determine whether the victim's testimony was tainted by suggestive or coercive interview techniques or other improper influences-mandated the witness' presence. By denying Watters an opportunity to question TD, he insists that the district court could not make a determination of whether her testimony was tainted. Watters claims that the alleged error is sufficient to support reversal of his conviction and a remand for a new trial.
 

 [¶11] The remedy requested by Watters at the taint hearing was for a continuance.
 

 The grant or denial of a motion for continuance is a discretionary ruling. Clearwater v. State, 2 P.3d 548, 553 (Wyo.2000). We, therefore, review the trial court's ruling on [the defendant's] motion for continuance for abuse of discretion. The ultimate question in determining whether an abuse of discretion has occurred is whether the trial court reasonably could have concluded as it did. Vaughn v. State, 962 P.2d 149, 151 (Wyo.1998). Review of a court's discretionary ruling on a continuance motion is highly dependent upon individual facts and circumstances. Cardenas v. State, 811 P.2d 989, 994 (Wyo.1991). The party attacking the court's ruling bears the burden of establishing the abuse of discretion. Id.
 

 Sincock v. State, 2003 WY 115, ¶ 25, 76 P.3d 323, ¶ 25 (Wyo.2003).
 

 [¶12] At the commencement of the competency hearing, the district court had granted Watters' motion to continue the taint part of, the hearing. However, the court explicitly informed the parties that if they could produce any evidence or argument related to the question of taint during the course of the competency hearing, they should do so. The victim was present at the competency hearing and was sworn in as a witness. Watters made no effort to question her regarding taint. It appears that Watters simply assumed that TD would be present when the taint hearing resumed four days later. Watters had the duty to ensure the presence at the hearing of any witnesses from whom he desired to take testimony. The burden of producing a witness for his defense rested with Watters. Montez v. State, 670 P.2d 694, 699 (Wyo.1983); see also
 
 *910
 
 Caton v. State, 709 P.2d 1260, 1266-67 fn. 7 (Wyo.1985). The taint hearing was held on a Friday. The trial was scheduled to begin on the following Monday.
 
 [4]
 
 Under these cireum-stances, the district court did not abuse its discretion in denying Watters' motion for a continuance.
 

 [T18] Further, Watters fails to explain in his brief how the district court's ruling prejudiced him. At trial, Watters admitted that he had a sexual relationship with TD and that they had engaged in intercourse at the group home on April 24, 2002. The issues in dispute during trial were whether the victim had the capacity to consent and whether Watters used a position of authority to force the victim to submit. Thus, the question of whether the victim's statements were tainted by suggestive or coercive interview techniques or some other improper influence was no longer at issue during the trial because Watters admitted the truth of those statements. Consequently, it is difficult to see how the court's ruling could have had any effect on the fairness of Watters' trial. Since Watters fails to even make an attempt at explaining how this ruling prejudiced his right to a fair trial, we need not consider his claim of error any further.
 

 The Victim's Competency to Testify
 

 [T14] Everyone is competent to be a witness except as otherwise provided by the Wyoming Rules of Evidence. W.R.E. 601; English v. State, 982 P.2d 139, 145 (Wyo.1999).
 

 "A person is generally competent to testify if he can understand, receive, remember and narrate impressions and is sensible to the obligations of the oath taken before testifying." [Simmers v. State, 943 P.2d 1189, 1199 (Wyo.1997) ]; Larsen v. State, 686 P.2d 583, 585 (Wyo.1984). "Intelligence, not age, is the guiding criteria in determining the competency of a witness." Baum v. State, 745 P.2d 877, 879 (Wyo.1987). It is a well-established principle of law that competency of witnesses to testify is a question within the sound discretion of the trial court. Selby v. Savard, 134 Ariz. 222, 655 P.2d 342, 347 (1982); People v. Estorgqa, 200 Colo. 78, 612 P.2d 520, 524 (1980); State v. Joblin, 107 Idaho 351, 689 P.2d 767, 771 (1984); State v. Howard, 247 Mont. 370, 806 P.2d 1038, 1039 (1991). However, when children are called into the courtroom to testify, we have held that once the child's competency is called into question by either party, it is the duty of the court to make an independent examination of the child to determine competency, and that determination will not be disturbed unless shown to be clearly erroneous. Burt v. Burt, 48 Wyo. 19,41 P.2d 524, 525 (1985) (quoting 5 Jones Commentaries on Evidence 3958, 3959, § 2107 (2d. Ed.)). See also Punches v. State, 944 P.2d 1131, 1136 (Wyo.1997); Trujillo v. State, 880 P.2d 575, 579 (Wyo.1994); Baum, 745 P.2d at 879; and Larsen, 686 P.2d at 585.
 

 We have directed the district courts to utilize a five-part test for determining the competency of child witnesses:
 

 "(1) an understanding of the obligation to speak the truth on the witness stand; (2) the mental capacity at the time of the occurrence concerning which he is to testify, to receive an accurate impression of it; (3) a memory sufficient to retain an independent recollection of the occurrence; (4) the capacity to express in words his memory of the occurrence; and (5) the capacity to understand simple questions about it."
 

 Larsen, 686 P.2d at 585 (quoting State v. Allen, 70 Wash 2d 690, 424 P.2d 1021 (1967)).
 

 Einglish, 982 P.2d at 145 (emphasis in original). Although TD was twenty-one years of age at the time of the charged incident, both parties agree that the analysis for determining the competency of a child should apply here given her mental disabilities. A direct comparison between the mental capacities of a child and mentally disabled adult cannot be precise, but we agree that the competency considerations applicable to a child witness
 
 *911
 
 are the appropriate criteria for determining the testimonial competency of a mentally disabled adult given their similarities See Commonwealth v. Anderson, 381 Pa.Super. 1, 552 A.2d 1064, 1067-69 (1988).
 

 [¶ 15] Initially, Watters posits that the issue of competency "encompassed both [the victim's] ability to testify and her legal capability to have consented, or withheld consent, to the sexual activity in question." He claims that the State's position was contradictory:
 

 Because of the way in which it charged the offense, citing W.S. § 6-2-302(a)(iv), the state was faced with the problem of having to prove that Mr. Watters knew or should have known that TD was "incapable of appraising the nature" of her conduct (engaging in sex with him) while simultaneously showing that this same "incapable" person had a sufficiently independent and reliable recall of events occurring months before trial to convict Mr. Watters of a very serious crime.
 

 Counterintuitive as it is to consider that a complaining witness can be sufficiently mentally challenged to place her in a specially protected category of victims and at the same time as competent as any other person to supply (uncorroborated) linchpin testimony, that is what the state was faced with.
 

 Watters complains that the trial court did not consider the "incongruity" of the State's position and that it "proceeded to actually only determine the witness's capacity to testify at trial."
 

 Watters) argument conflates two distinct concepts. The question of a witness's competency to testify is one determined by the trial judge. English, 982 P.2d at 145. The question of a victim's competency to consent to sexual activity is one determined by the jury because it is an element of the crime charged. See Wyo. Stat. Ann. § 6-2-302(a)(iv). The trial court "only" determined TD's competency to testify at trial because that was the only question that was within its purview to answer. Furthermore, Watters' attack upon the State's position that the victim was competent to testify at trial, but not to consent to sexual activity, cannot withstand serutiny. In his brief, Watters states that the victim functioned at the level of a sixth grader. The State's argument is that TD is the equivalent of a child witness. We do not find it unreasonable or "counterin-tuitive" for the State to argue that a person who functions at the level of a sixth grader is competent to testify but does not possess the capacity to consent to sexual relations.
 

 [¶ 17] Watters goes on to contend that the trial court failed to allow a full and fair competency hearing. He complains that at the competency hearing, the examination of TD by the district court merely consisted of leading questions that did nothing to elicit anything other than a willingness on the part of the victim to please an authority figure like the judge. Watters insists that the trial court just recited the factors set out in English to determine witness competence without revealing specific facts upon which its conclusion of competency rested. Watters alleges prejudice from the district court's erroneous conclusion in that the jury was asked to reach the critical conclusion that consent did not exist on April 24, 2002, based entirely upon the unreliable, uncorroborated testimony of TD, an incompetent witness with a low IQ, diminished mental age, impaired memory, and a pronounced desire to please her questioners.
 

 [¶ 18] The transcript of the competency hearing supports the trial court's ruling. At the outset of the hearing, TD acknowledged that an oath was a promise to tell the truth and that she was willing to take one. TD's answers were generally responsive to the questions asked. She was able to give correct replies to general information questions asking for her name, age, and the address of the group home where she lived. In response to questions about the incident on April 24th, TD was able to give responses that exhibited an ability to recall the incident and express it in a coherent manner: She identified the people present at the home at the time of the incident, what happened between her and Watters, and that she contacted her mother after the incident. Contrary to Watters' assertion, we find that the record reveals that the trial court did not just gloss over the factors set out in English; rather, it
 
 *912
 
 specifically referenced its examination of TD. We also perceive Watters' allegation of prejudice to go toward witness credibility and the weight to be accorded to the victim's testimony and not to her competency to take the stand to testify. Kavanaugh v. State, 769 P.2d 908, 911 (Wyo.1989) (weight and eredi-bility of a witness's testimony is determined by the jury). Our review of the record leads to the conclusion that the trial court's decision that TD was competent to testify was not clearly erroneous and was within the court's sound discretion.
 

 Admission of Evidence Pursuant to W.R.E. 404(b)
 

 [T 19] On August 1, 2002, the State filed a Notice of Intent to Use Evidence in response to a Demand for Notice of Intent to Introduce Evidence under 404(b) filed by Watters. The State indicated that TD would testify about sexual contact with Watters that took place at the family home in Glenrock in Converse County from December of 2000 until May of 2001. TD would also testify that Watters had taken explicit photographs of them engaged in sexual activity and that he had shown her those pictures on his computer. The State intended to offer TD's testimony and the photographs for the following purposes:
 

 To show a course of conduct or pattern of sexual abuse, to show motive, to place the offense in its proper setting and to properly understand the context of the charged offenses, to support the credibility of the victim and corroborate her testimony, and to overcome defense claim of fabrication or improper motive * * * [.]
 

 Watters objected to the proposed evidence, and the trial court considered the matter during a motions hearing on August 13, 2002. At the hearing, the State emphasized that TD's testimony about her sexual relationship with Watters prior to the incident on April 24, 2002, was relevant and admissible pursuant to W.R.E. 404(b) to show a course of conduct and a pattern of sexual abuse. The State asserted that the photographic evi-denee was admissible to corroborate that testimony.
 

 [¶ 20] The State also noted that the see-ond-degree sexual assault charge required a showing that Watters was in a position of authority over TD, which he used to cause her to submit. The State argued that the testimony was relevant to establish the context necessary to prove that element of the charged crime. On August 26, 2002, the trial court issued an order admitting TD's proposed testimony and the photographs pursuant to Rule 404(b). The court noted that the proposed testimony of TD was properly characterized as "course of conduct evidence, which is admissible to give 'the jury a complete story when it is relevant and necessary to tell the complete story for the jury's understanding." " Solis v. State, 981 P.2d 28, 31 (Wyo.1999). The trial court also cited identity as a proper purpose before concluding that the probative value of the evidence outweighed any prejudicial effect.
 
 [5]
 
 At trial, TD testified about the prior sexual acts in (Hlenrock and described the explicit photographs taken by Watters of them engaging in sex. Over Watters' objection, the trial court admitted all but one of the photos.
 
 [6]
 

 
 *913
 
 [¶ 21] On appeal, Watters reiterates his objection to TD's testimony and the photographs. He complains that the State used a "shotgun" approach but that none of the proffered reasons for admission made any sense in the context of this case. Watters did not deny that he had sexual intercourse with TD on April 24, 2002, at the group home. Accordingly, he argues that the 404(b) evidence was not relevant because it did not help determine whether TD had the capacity to consent to sex. Watters insists that the evidence was not necessary to bolster TD's credibility either, since he did not make that an issue. He claims that the State's true motive for getting this evidence before the jury was to argue character. Watters points to two excerpts from the State's closing argument that he describes as "thinly veiled" improper character argument:
 

 Now, not only the pictures and the photographs, what other evidence do you have that tells you what we know about this man? What tells you that [Watters] knew his behavior was wrong? The testimony that you have at your disposal for that, those photographs again. There's no face. There's no heads. Why is that? You think maybe he's trying to hide the identity in taking those photographs? If it's a sweet, loving relationship, you just take pictures of two people holding each other or kissing. Because these are pictures of sexual acts, that is an indication to you ladies and gentlemen of using an individual. That's what that tells you.
 

 [[Image here]]
 

 Now, [defense counsel] indicated that we totally didn't talk about April 24th, 2002, and the only thing that we wanted to talk about was Converse County. But Converse County and what happened over there is primarily what happened through the whole 11 years of [TD's] life. (Sic). And that's what we're talking about here is who she is as a person. Because that's what they're trying to defend, that she was a consenting adult that could have a consensual relationship.
 

 But we go back in history and tell you what kind of person she is. And that's why it's relevant. And then what was going on in that house over in Glenrock is relevant too because it shows you what [Watters] was doing with her, not a loving, consensual relationship, but using her for his own sexual gratification. {emphasis by Watters).
 

 Similarly, Watters argues that the photographs of his sexual conduct with TD were not probative of any element of the erime charged and were highly prejudicial because their explicit nature could only inflame the jury.
 

 [T22] The admission of evidence under Rule 404(b) is reviewed for an abuse of discretion. @leason v. State, 2002 WY 161, 1118, 57 P.3d 832, 118 (Wyo.2002).
 

 We have described the standard of an abuse of discretion as reaching the question of the reasonableness of the trial court's choice. Griswold v. State, 2001 WY 14, 17, 17 P.3d 728, ¶ 7 (Wyo.2001). Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means exercising sound judgment with regard to what is right under the cireumstances and without doing so arbitrarily or capriciously. Id. "In the absence of an abuse of discretion, we will not disturb the trial court's determination." Id. The burden is on the defendant to establish such abuse. Trujillo [v. State], 2 P.8d [567] at 571 [ (Wyo.2000) ].
 

 Gleason, at 129 (quoting Skinner v. State, 2001 WY 102, 125, 33 P.3d 758, 125 (Wyo.2001), cert. denied, 535 U.S. 994, 122 S.Ct. 1554, 152 L.Ed.2d 477 (2002)).
 

 [¶ 23] The State offered several purposes for admitting TD's testimony regarding the prior sexual acts with Watters that took place in Converse County. At the motions hearing, the State focused on two of those purposes in particular: course of conduct and bolstering TD's credibility. The trial court agreed and admitted the testimony on this basis along with a finding that the evidence was probative of identity. We agree with the trial court. As the trial court noted, evidence is admissible to show course of conduct if it will present the jury with a complete story:
 

 "* * * The testimony does not bear upon separate criminal occurrences or bad acts.
 
 *914
 
 Rather, it is helpful to explain what happened between appellant and his victim, and is integral to understanding the context of the crime charged.... In some jurisdictions it is defined as the evidence of the context of the offense and consequently admissible with the reasoning that 'events do not occur in a vacuum and the jury has the right to have the offense placed in its proper setting.'..." (Emphasis in original; citations omitted).
 

 Miller v. State, 755 P.2d 855, 861 (Wyo.1988) (quoting Scadden v. State, 732 P.2d 1036, 1044 (Wyo.1987)).
 

 [¶ 24] At trial, TD described how Watters appeared at the group home on the evening of April 24, 2002. TD was eating dinner when she observed Watters approaching. TD testified that she was seared because she was afraid that Watters was "going to do something." TD ran downstairs to her bedroom to avoid Watters. However, she forgot to lock her door. Watters entered the room and "sweet talked" TD into doing something she testified that she did not want to do-have sexual intercourse. The testimony from TD regarding her prior sexual contact with Watters explained her actions: It told the jury why she was seared and why she tried to avoid Watters. The incident on April 24th did not happen in a vacuum-it was a direct outgrowth of the prior incidents. Even if Watters admitted that the incident at the group home occurred, the State was still entitled to present its case to the jury. TD's testimony regarding the prior sexual incidents was short and concise-TD simply stated that Watters had engaged in sexual conduct with her while they lived at the Watters' marital home in Glenrock without describing the nature of the sexual conduct in any detail mitigating much of the prejudicial affect of the testimony.
 

 [T25] TD's testimony was also relevant to the second-degree sexual assault charge against Watters. That charge alleged that Watters was in a position of authority over TD and that he used that position to cause her to submit. Wyo. Stat. Ann. § 6-2-308(a)(iv). In Humphrey v. State, 962 P.2d 866 (Wyo.1998), the defendant was charged with second-degree sexual assault on his daughter who lived with him, his wife, and two "spiritual" wives. The district court admitted testimony under Rule 404(b) relating to the defendant's relationship with his extended family, including instances of death threats, sexual encounters with the women in the household, and the strict discipline that was imposed by the defendant. Id. at 870. We affirmed, concluding that the evidence was properly admitted to show course of conduct:
 

 We have repeatedly stated that a defendant's uncharged misconduct is admissible to demonstrate a course of conduct which clarifies what happened between an accused and the victim or serves to enhance the natural development of the facts. [Citations omitted].
 

 The relevance of the evidence is equally patent. In this case, an essential element of the charged offenses required the State to show that Humphrey used his position of authority to cause the victim to submit. We agree with the district court that testimony illustrating the family dynamics to which this victim was subjected was clearly relevant to show Humphrey's abuse of authority.
 

 Humphrey, 962 P.2d. at 871. As in Humphrey, TD's testimony was relevant to the question of whether Watters had used his authority over her to cause submission. Under the circumstances, we cannot find an abuse of discretion.
 

 [¶ 26] In addition to TD's testimony, the trial court admitted four photographs that graphically depicted sexual conduct between Watters and the victim. The photographs did not depict the face of either party, but TD's doctor testified that he could identify her from distinctive sears on her body caused by a childhood water-scalding incident.
 

 [¶ 27] At trial, Watters argued that his sexual relationship with the victim was a loving, consensual one. The State countered that Watters was using his position of authority over the victim as her foster father/guardian to exploit her for sexual gratification. The existence of the photographs tends to undercut Watters' theory and bolster the State's. The photographs are evi
 
 *915
 
 dence that the motivation for the sexual relationship was not love but sexual gratification, a point the State made in its closing argument. The photographs go directly to the parties' theories of the case and were clearly relevant evidence. See Hopkinson v. State, 632 P.2d 79, 139 (Wyo.1981) (Photographs depicting torture of murder victim were admissible as they were relevant to the State's theory of the case as it correlated to the defendant's motive to commit the murder and making them cireumstantial evidence of guilt.). The explicit nature of the photographs may have made for unpleasant or uneasy viewing for the jury. However, there is no question that they possessed significant probative value under the cireumstances of this case, and Watters has not convinced us that the probative value of the photographic evidence was outweighed by any prejudicial affect.
 

 [¶ 28] Finally, as part of his argument on this issue, Watters pointed to two extracts from the State's closing argument at trial and asserted that the State used this evidence to argue guilt based upon his character. Our review of the record indicates that the argument the State was making was not related to character but to the charge that Watters had caused TD to submit through abuse of his position of authority over her and to the relevance of the photographs as identifying Watters and corroborating TD's testimony about the prior sexual acts. We find no error in the State's argument.
 

 Exclusion of Evidence Pertaining to Victim's Prior Sexual Activity
 

 [¶ 29] Prior to trial, the State filed a Motion Regarding Victim's Prior Sexual Conduct or Reputation seeking to exclude any evidence of TD's prior sexual conduct or reputation on the basis that Watters had not complied with Wyo. Stat. Ann. § 6-2-812(a). That statute sets out a procedure for the introduction of evidence of a victim's prior sexual conduct or reputation in any prosecution for a defined set of crimes, including first- and second-degree sexual assault:
 

 (a) In any prosecution under W.S. 6-2-302 through 62-805 [6-2-8304] or for any lesser included offense, if evidence of the prior sexual conduct of the victim, reputation evidence or opinion evidence as to the character of the victim is to be offered the following procedure shall be used:
 

 (1) A written motion shall be made by the defendant to the court at least ten (10) days prior to the trial stating that the defense has an offer of proof of the relevancy of evidence of the sexual conduct of the victim and its relevancy to the defense;
 

 (ii) The written motion shall be accompanied by affidavits in which the offer of proof is stated;
 

 (1) If the court finds the offer of proof sufficient, the court shall order a hearing in chambers, and at the hearing allow the questioning of the victim regarding the offer of proof made by the defendant and other pertinent evi-denee;
 

 (iv) At the conclusion of the hearing, if the court finds that the probative value of the evidence substantially outweighs the probability that its admission will create prejudice, the evidence shall be admissible pursuant to this section. The court may make an order stating what evidence may be introduced by the defendant, which order may include the nature of the questions to be permitted.
 

 (b) This section does not limit the introduction of evidence as to prior sexual conduct of the victim with the actor.
 

 (c) Any motion or affidavit submitted pursuant to this section is privileged information and shall not be released or made available for public use or serutiny in any manner, including posttrial [sic] proceedings.
 

 Wyo. Stat. Ann. § 6-2-3812 (LexisNexis 2003). The trial court considered the motion at a hearing held the morning of trial. Initially, defense counsel stated there was no intent to introduce conduct or reputation evidence. However, he backed off that position and conceded that the defense did want to inquire of TD whether she had ever had
 
 *916
 
 sexual relations with her foster brother. Defense counsel attempted to maneuver around the prohibition of §$ 6-2-812(a) by arguing that there was a note in the police report indicating that TD had admitted prior sexual contact with that person and, therefore, the inquiry went towards TD's veracity rather than her reputation. The trial court rejected Watters' argument. The court concluded that Watters was seeking to present conduct evidence and that he had failed to present a motion and affidavits for an offer of proof as required by § 6-2-312(a). The State's motion was granted, and Watters was prohibited from presenting any evidence of the prior sexual conduct of the victim or any reputation or opinion evidence as to her character. Watters was allowed to make inquiries into the victim's knowledge of sex and the scope and nature of any sex education she may have had.
 

 [T830] On appeal, Watters argues that evidence of TD's alleged prior sexual relationship with her foster brother was relevant to the question of whether she had the capacity to consent and that the trial court erred in barring it. Watters) argument is fatally flawed by his assumption that defense counsel successfully distinguished this evi-denee from that generally excluded by § 6-2-312. Watters' sole reference in his brief to that statute reads:
 

 The defense distinguished this type of testimony from "character" or "reputation" testimony such as might fall under W.S. § 6-2-3812.
 

 We agree that evidence of a sexual relationship between TD and her foster brother is not character evidence through reputation or opinion. It is, however, evidence of prior sexual conduct. Section 6-2-8312 is clear and unambiguous-evidence of a victim's prior sexual conduct and reputation or opinion evi-denee of their character is not admissible in prosecutions for first-degree, second-degree, and third-degree sexual assault unless a written motion accompanied by affidavits in which an offer of proof of the relevancy of the evidence is made at least ten days prior to trial and the trial court finds the offer of proof sufficient. The statute uses the word "shall" indicating a legislative intent that this procedure is a mandatory prerequisite to the admission of this evidence. Heinrich v. State, 638 P.2d 641, 645-46 (Wyo.1981). The record shows that Watters never attempted to comply with the requirements of § 6-2-312 prior to seeking admission of the evidence. On appeal, Watters argues the relevancy of this evidence to his defense but he does not tell us why he should be excused from complying with the statute. Watters' argument is simply not responsive to the district court's ruling and is not cogent. We decline to address it further and summarily affirm the trial court's decision to bar the evidence of the victim's alleged prior sexual conduct.
 

 Sentencing
 

 [T31] Watters was sentenced to a term of not less than 288 months and not more than 408 months in the state penitentiary. Wat-ters contends that the trial court abused its discretion when it imposed that sentence. Watters compares his sentence to those imposed in other cases in which the actions of the defendants were more egregious and complains that his punishment was excessive since there was no violence involved and this was his first offense.
 

 [T82] The sentence imposed on Watters was within the limits proscribed by the legislature. Wyo. Stat. Ann. § 6-2-306(a)(1) (LexisNexis 2008) ("Sexual assault in the first degree is a felony punishable by imprisonment for not less than five (5) years nor more than fifty (50) years[.]").
 

 Our rule is, when the imposition of a criminal sentence by a trial court is within the limits set by the legislature, the sentence will not be overturned, absent a clear abuse of discretion. [Citations omitted] This is consistent with the common law rule, but we do maintain a window of re-viewability, even when the trial court has imposed a legally-prescribed sentence. Wright v. State, 670 P.2d 1090 (Wyo.1983).
 

 This window of reviewability, as de-seribed in Wright, 670 P.2d at 1092 (quoting Scheikofsky v. State, 636 P.2d 1107, 1113 (Wyo.1981)), is:
 

 A sentence will not be disturbed because of sentencing procedures unless the de
 
 *917
 
 fendant can show an abuse of discretion, procedural conduct prejudicial to him, and circumstances which manifest inherent unfairness and injustice, or conduct which offends the public sense of fair play.
 

 Smith v. State, 922 P.2d 846, 848 (Wyo.1996). "Judicial discretion is a compogite of many things, among which are conclusions drawn from objective criteria; it means a sound judgment exercised with regard to what is right under the cireumstances and without doing so arbitrarily or capriciously." Vaughn v. State, 962 P.2d 149, 151 (Wyo.1998) (quoting Martin v. State, 720 P.2d 894, 897 (Wyo.1986)).
 

 [¶ 83] We do not consider sentences imposed upon similarly situated defendants except in cases where the mode of punishment is unusual or where the relative length of the sentence to imprisonment is extreme when compared to the gravity of the offense. Wilks v. State, 2002 WY 100, 141, 49 P.3d 975, ¶ 41 (Wyo.2002); Smith, 922 P.2d at 849. When assessing the reasonableness of a sentence, consideration is given to the crime, its attendant cireumstances, and the character of the defendant. Smith, 922 P.2d at 849; Wright, 670 P.2d at 1092.
 

 [¥34] We conclude that the sentence imposed upon Watters is entirely consistent with the crime, its attendant cireum-stances, and his character. This is not one of those rare cases where the factors identified above would direct us to a comparison of other sentences for the same crime. Watters fails to present a convincing argument that the relative length of his sentence was extreme when compared to the gravity of his crime. Indeed, in making his argument, Watters ignores the position of trust he held, and subsequently abused, as the victim's foster parent and guardian. At sentencing, the trial court also noted that Watters did not take any responsibility for his actions and their harmful effects on a particularly vulnerable victim nor did he express any remorse. Given these circumstances, we cannot say that the trial court abused its discretion and, accordingly, we will not disturb the sentence imposed.
 

 CONCLUSION
 

 [¶ 35] Finding no error, we affirm Wat-ters' conviction and sentence.
 

 [1]
 

 . Wyo. Stat. Ann. § 6-2-302(a)(iv):
 

 (a) Any actor who inflicts sexual intrusion on a victim commits a sexual assault in the first degree if:
 

 [[Image here]]
 

 (iv) The actor knows or reasonably should know that the victim through a mental illness, mental deficiency or developmental disability is incapable of appraising the nature of the victim's conduct.
 

 [2]
 

 . Wyo. Stat. Ann. § 6-2-303(a)(vi):
 

 (a) Any actor who inflicts sexual intrusion on a victim commits sexual assault in the second degree if, under circumstances not constituting sexual assault in the first degree:
 

 [[Image here]]
 

 (vi) The actor is in a position of authority over the victim and uses this position of authority to cause the victim to submitl.]
 

 [3]
 

 . The charges were listed as alternatives. The jury was instructed to consider the first-degree sexual assault charge first. If it concluded that Watters was guilty, then its deliberations ended. The second-degree sexual assault charge was to be considered only if a not guilty verdict had been reached on the first-degree sexual assault charge.
 

 [4]
 

 . The trial was subsequently postponed from Monday, September 16, 2002, to October 14, 2002, because of an illness to one of the atior-neys. We note that Watters did not make any motion to reopen the taint issue in the interim.
 

 [5]
 

 . The trial court's order simply stated, "Finally, this judge would find that the proposed evidence is clearly relevant, and that the probative value of the evidence is not substantially outweighed by its potential for unfair prejudice." There was no analysis of the factors considered in balancing the probative value against the potential for unfair prejudice. In Gleason v. State, 2002 WY 161, 1T 26-30, 57 P.3d 332, 1126-30 (Wyo.2002), we stated that "a bald statement that probative value outweighs prejudicial effect will no longer be sufficient" and that a trial court must explain on the record why the proposed evidence is more probative than prejudicial. Id. at 1127, 30. We set forth the factors that the court should consider when making that determination. Id. at 127. The Gleason opinion stressed that the process was mandatory. Id. at 127. Our decision in Gleason was issued on October 24, 2002, one week afier the jury rendered its verdict in this case. Since the Gleason decision was not extant at the time the trial court had to make its decision in this case, we will review its conclusions as best we can using the arguments of the parties and the record. However, we again stress that the process we set down in Gleason is mandatory and must be complied with in cases subsequent to its publication.
 

 [6]
 

 . The court denied admission of one photograph that it found to be cumulative and without any additional probative value in light of the admission of the other photographs.