2008 WY 12

**David Eugene HUBBARD, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. 06–235.

Supreme Court of Wyoming.

Feb. 5, 2008.

Representing Appellant: Galen Woelk of Aron and Hennig, LLP, Laramie, Wyoming.

Representing Appellee: Patrick J. Crank, Wyoming Attorney General; Terry L. Armitage, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Eric Johnson, Faculty Director, Prosecution Assistance Program; Geoffrey Gunnerson, Student Director; and Jennifer Reece, Student Intern. Argument by Mr. Johnson.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

HILL, Justice.

[¶ 1]   Pursuant to a plea agreement, Appellant David Eugene Hubbard ("Hubbard"), pled guilty to one count of third-degree sexual assault and one count of immodest, immoral, or indecent acts with a minor.   On appeal, Hubbard claims that he was substantially prejudiced and deprived of due process during his sentencing proceeding because an improper Victim Impact Statement and Presentence Investigation Report ("PSR") had been previously filed with the district court. Hubbard further argues that his sentence of not less than 17 nor more than 25 years of incarceration was disproportionate to the magnitude of his crimes and constitutes an abuse of discretion.   We affirm.

### ISSUES

[¶ 2]   Hubbard presents these issues for our review:

I.   Whether the district court abused its discretion when it sentenced Hubbard.

II.   Whether the State's misconduct substantially prejudiced Hubbard and deprived him of his right to due process and a fair sentencing hearing.

The State has set forth the issues to be:

I.   Did the district court commit procedural error when it sentenced [Hubbard]?

II.   Did the district court commit plain error when the judge did not recuse himself?

III.   Did the district court abuse its discretion in sentencing [Hubbard]?

### FACTS AND PROCEEDINGS

[¶ 3]   The felony information filed in this case charged Hubbard with two counts of third-degree sexual assault in violation of Wyo. Stat. Ann. § 6–2–304(a)(ii) (LexisNexis 2005), and one count of immodest, immoral or indecent acts with a minor in violation of Wyo. Stat. Ann. § 14–3–105(a) (LexisNexis 2005).[1]   The facts of the incidents were obtained from forensic interviews with the victims.

[¶ 4]   The earliest incident occurred over the Easter weekend in 2005.   The victim was S.W., a 13–year–old girl from Nebraska. S.W. stated in her interview with authorities that her 12–year–old friend, C.R., had invited her to visit C.R.'s uncle, David Hubbard, at his residence in Laramie, Wyoming.   S.W. alleged that during her weekend stay at the residence, Hubbard touched S.W. on three separate occasions.   The first incident occurred when S.W., C.R., and Hubbard were playing a game of ping-pong in Hubbard's basement.   S.W. claimed that when C.R. went upstairs, Hubbard hit the ping-pong ball off the table and when S.W. went to pick up the ball, Hubbard followed her.   As S.W.'s back was turned to Hubbard when she reached down to pick up the ball, Hubbard came up behind her, reached underneath her shirt, and touched her stomach.

[¶ 5]   S.W. stated that the second incident occurred the next day when she was sitting on the living room couch with C.R. and Hubbard.   Hubbard was sitting between the two girls, and the three were covered with a blanket.   S.W. claimed that Hubbard proceeded to put his hand underneath her shirt and bra and touch her breasts for approximately 15 to 20 minutes, after which S.W. left the couch.

[¶ 6]   S.W. maintained that the third and final incident occurred on the night before she returned to Nebraska.   S.W. stated that Hubbard had invited her to sit on the couch next to him to watch a movie, but she declined and opted to sit on the floor.   When Hubbard continued to ask S.W. to sit by him, S.W. finally agreed.   Hubbard then placed a blanket over the two of them and placed his hand on S.W.'s hip outside of her clothing.

[¶ 7]   The other significant report of abuse came from A.L., a 14–year–old girl also from Nebraska.   In A.L.'s interview, she stated that over the Fourth of July weekend in 2005, she had accompanied K.A., her 13–year–old girlfriend, to visit the Hubbard residence.   A.L. stated that one evening she,

---

1.   One of the two third-degree sexual assault charges was dropped pursuant to Hubbard's plea agreement, thus, this opinion will only discuss the relevant facts in relation to the two remaining charges.

K.A., and Hubbard were playing a computer game. A.L. claimed that K.A. was sitting at the computer while A.L. and Hubbard were seated on separate chairs behind and out of view of K.A. A.L. reported that Hubbard began rubbing her back with his right hand and proceeded to put his hand inside her shirt *via* the right armhole and rub her chest and breasts underneath her bra. Hubbard allegedly also moved his hand down her shorts and underwear touching her pubic area.

[¶ 8] A.L. also claimed that later this same evening, Hubbard was sitting next to A.L. on the couch when Hubbard stretched A.L.'s right leg out across his lap and began to rub her leg and asked A.L. to rub his arm. A.L. stated that she did so reluctantly.

[¶ 9] When the Laramie Police interviewed Hubbard, he admitted to touching S.W.'s breasts while playing ping-pong in the basement and while sitting on the couch in his living room. Hubbard claimed that on both occasions, he touched S.W. under her shirt, but over her bra, and admitted doing so for sexual gratification. When questioned in regard to A.L., Hubbard admitted to touching A.L.'s breasts, under her shirt but over her bra, but he denied putting his hand in A.L.'s shorts. Hubbard also admitted doing so for sexual gratification.

[¶ 10] As noted above, pursuant to Hubbard's plea agreement, he agreed to plead guilty to Counts II and III, involving S.W. and A.L., and in exchange the State agreed to dismiss Count I. However, there was no sentencing recommendation agreement between the State and Hubbard.

[¶ 11] Subsequent to Hubbard's guilty plea, but prior to his sentencing, Hubbard obtained a Forensic Psychosexual Evaluation. Also prior to sentencing, the Albany County Victim Witness Program prepared and delivered a Victim Impact Statement to the district court and to Wyoming Probation and Parole. Although the Victim Impact Statement contained the statements of S.W., and the parents of S.W. and A.L., the document also contained the statements of several other individuals beyond those affected by the charged crimes.

[¶ 12] After Hubbard's counsel received a copy of the Victim Impact Statement, he contacted the County Attorney in writing, and requested that the County Attorney stipulate to redact the portions of the Victim Impact Statement that referred to the additional "victims." The State responded that Hubbard's counsel should instead file a motion with the district court.

[¶ 13] Accordingly, on May 22, 2006, Hubbard filed a Motion to Strike Victim Impact Statement and for Order of Compliance moving the district court to strike the Victim Impact Statement from the record. However, while a decision on Hubbard's motion was pending, the Victim Impact Statement was incorporated into Hubbard's PSR, which was delivered to the district court on May 25, 2006. Hubbard then filed his Objection to Inaccurate Information in the Presentence Investigation and Motion to Strike because, *inter alia*, the PSR referenced multiple victims other than S.W. and A.L.

[¶ 14] On June 30, 2006, after hearing arguments on Hubbard's motions, District Court Judge John C. Brooks ordered that the victim impact statements that were filed by individuals other than S.W., A.L., and their families, could not and had not been considered by the court. The district court also ordered that the recommendations from the PSR investigator should be stricken and that the PSR should be amended so that it would only reflect the appropriate statements. The district court explained that because it had received the victim impact statements "almost simultaneously" with Hubbard's objections, the only victim impact statements that the court had considered were those of S.W., A.L., and their parents.

[¶ 15] Shortly after granting Hubbard's motions, the parties proceeded to sentencing. At sentencing, the State argued that Hubbard should receive the maximum composite sentence of 25 years. In response, Hubbard and his counsel presented several mitigating factors for the court to consider, such as the fact that Hubbard had no prior employment problems, no prior criminal offenses, no substance abuse problems, no suicidal ideation, and he had exhibited remorse for his conduct.

[¶ 16]   The district court ultimately found that Hubbard's crimes were "particularly egregious" and sentenced Hubbard to consecutive sentences of 11 to 15 years on Count II, and 6 to 10 years on Count III. The district court explained that Hubbard's Forensic Psychosexual Evaluation provided that without significant counseling, Hubbard had a high risk of re-offending. The district court also stated that Hubbard had repeatedly committed these crimes while acting with the full knowledge that his actions were wrong. In regard to the consecutive nature of sentence, the court determined that this was appropriate because Hubbard's crimes were those of a sexual predator who had purposefully groomed his victims.

[¶ 17]   The Judgment, Sentence and Order of Incarceration was filed on August 4, 2006, after which Hubbard timely filed his notice of appeal.

## DISCUSSION

### Procedural Error

■   [¶ 18]   Although the district court explicitly stated that it had not and would not consider the disputed victim impact statements and PSR materials, Hubbard maintains that the mere submission of these materials resulted in a procedural error that substantially prejudiced Hubbard and compromised his right to due process. Specifically, Hubbard claims that "but for" this procedural impropriety, his sentence would not have been "as unreasonable."

■   [¶ 19]   Hubbard's burden in this regard is an arduous one. A sentence will not be disturbed due to sentencing procedures unless the defendant can show an abuse of discretion, procedural conduct prejudicial to him, and circumstances which manifest inherent unfairness and injustice, or conduct which offends the public sense of fair play. *See Bitz v. State*, 2003 WY 140, ¶ 7, 78 P.3d 257, 259 (Wyo.2003); *see also Monjaras v. State*, 2006 WY 71, 136 P.3d 162 (Wyo. 2006). Although due process provides a right to be sentenced only on accurate information, to prevail on appeal the appellant must also prove that the district court relied upon the inaccurate statements. *See Manes*

*v. State*, 2004 WY 70, ¶ 9, 92 P.3d 289, 292 (Wyo.2004).

[¶ 20]   While a district court is required to gather and consider certain information prior to sentencing, *see Lee v. State*, 2001 WY 129, ¶ 23, 36 P.3d 1133, 1141 (Wyo.2001), our legislature has limited the admissibility of victim impact statements to the victims of the particular crime for which the defendant is being sentenced. *See Bitz*, ¶ 22, 78 P.3d at 263 (interpreting Wyo. Stat. Ann. § 7–21–103 (LexisNexis 2003)). Likewise, this Court has recognized that where a defendant alleges a factual inaccuracy in a PSR, the district court must either make a finding as to the contested matter or make a determination that no finding is necessary because the matter will not be considered for sentencing. *Bitz*, ¶ 17, 78 P.3d at 262 (interpreting W.R.Cr.P. 32(a)(3)(C)).

[¶ 21]   In this case, there can be no dispute that the district court properly followed the sentencing procedures as required by W.R.Cr.P. 32(a)(3)(A) and (C). When Hubbard objected to the Victim Impact Statement and PSR, the district court heard arguments from the parties and ultimately struck the victim impact statements made by persons other than S.W. and A.L. Accordingly, as the district court acted in accordance with the Wyoming Rules of Criminal Procedure, there does not appear to have been any procedural error.

[¶ 22]   However, even if we were to assume for the purposes of this opinion that an error was present in the sentencing procedure, Hubbard could not establish that this procedural error resulted in any prejudice. *See, e.g., Cooper v. State*, 2002 WY 78, ¶ 15, 46 P.3d 884, 890 (Wyo.2002). Here, the district court specifically stated that it had not and would not consider any statements that were not those of S.W., A.L., and their parents. Although Hubbard maintains that the mere submission of improper material to the district court will suffice to create prejudice, we have never ruled so in the past, and we refuse to do so here.

### Prosecutorial Misconduct

[¶ 23]   Hubbard also asserts that the State engaged in prosecutorial misconduct

when it knowingly and intentionally presented the district court with the improper victim impact statements, and by later refusing to stipulate to the redaction of the disputed material.

[¶ 24] Where there has been an objection below, claims of prosecutorial misconduct are reviewed for harmless error, which occurs if there is a reasonable possibility that the outcome may have been more favorable to the defendant if the error had never occurred. *See Teniente v. State*, 2007 WY 165, ¶ 11, 169 P.3d 512, 520 (Wyo.2007) (quoting *Butcher v. State*, 2005 WY 146, ¶ 38, 123 P.3d 543, 554 (Wyo.2005)). Wyoming law clearly provides that a sentencing decision cannot be based upon unreliable information, undocumented information, or inaccurate information, *see Manes*, ¶ 13, 92 P.3d at 293, and a prosecutor's act of bringing undocumented allegations to the district court's attention so that the court would consider that allegation in sentencing is prosecutorial misconduct. *Id.* (citing *DeLoge v. State*, 2002 WY 155, ¶ 13, 55 P.3d 1233, 1239 (Wyo.2002)).

[¶ 25] In this case, we decline to hold that prosecutorial misconduct arises from the mere submission of victim impact statements that may contain statements from individuals beyond those who were affected by the charged crimes. Furthermore, even if we were to conclude that such a submission constituted misconduct, Hubbard cannot establish that he suffered any prejudice. The district court explicitly stated that it had only considered the statements of S.W., A.L., and their parents, and it had not and would not consider the statements from any other individuals. Therefore, based upon our review of the record, we cannot conclude that a reasonable possibility exists that Hubbard's sentence would have been more favorable to him in the absence of the disputed Victim Impact Statement and PSR.

**Disproportionate Sentence**

[¶ 26] Hubbard's final argument is that his sentence of not less than 17 nor more than 25 years of incarceration is disproportionate to the magnitude of his crimes and constitutes an abuse of discretion. Hubbard maintains that the mitigating factors that he

presented to the district court were significant and that, as a result, the district court's sentence is excessive and unreasonable.

[¶ 27] In Wyoming, when the district court's imposition of a criminal sentence is within the limits set by the legislature, the sentence will not be overturned, absent a clear abuse of discretion. *See Watters v. State*, 2004 WY 155, ¶ 32, 101 P.3d 908, 920 (Wyo.2004). "Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means a sound judgment exercised with regard to what is right under the circumstances and without doing so arbitrarily or capriciously." *Id.* at 921 (quoting *Martin v. State*, 720 P.2d 894, 897 (Wyo.1986)). Furthermore, when a defendant pleads guilty, he is exposed to criminal liability up to, and including, the maximum sentence for each of his crimes. *See Garcia v. State*, 2007 WY 48, ¶ 14, 153 P.3d 941, 945 (Wyo.2007).

[¶ 28] Here, the sentences imposed by the district court were well within the statutory sentencing range fixed by the legislature, and Hubbard does not dispute this. Hubbard pled guilty to one count of sexual assault in the third-degree, and one count of immodest, immoral, or indecent acts with a minor in violation of Wyo. Stat. Ann. §§ 6–2–304(a)(ii) and 14–3–105(a), respectively. A conviction of third-degree sexual assault carries a maximum sentence of 15 years, and Hubbard received a sentence of 11 to 15 years. A conviction of immodest, immoral, or indecent acts with a minor carries a maximum sentence of 10 years and Hubbard received a 6 to 10 year sentence.

[¶ 29] Although Hubbard cites to several cases in support of his argument that his sentence is excessive as compared with those of others convicted of similar crimes, this Court has repeatedly held that it will not participate in such comparisons unless the mode of punishment is unusual or where the relative length of the sentence to imprisonment is extreme when compared to the gravity of the offense. *See Watters*, ¶ 33, 101 P.3d at 921; *Blakeman v. State*, 2002 WY 177, ¶ 11, 59 P.3d 140, 142–43 (Wyo.2002); *Sampsell v. State*, 2001 WY 12, ¶ 10, 17 P.3d 724, 728 (Wyo.2001).

[¶ 30]  Hubbard has failed to persuade us that the relative length of his sentence was extreme when compared to the gravity of his crimes.  As noted by the district court, Hubbard repeatedly and intentionally assaulted S.W. and A.L. for the purpose of achieving his own sexual gratification, while knowing that his actions were wrong.  Although Hubbard did express some remorse for his actions, he nonetheless behaved as a sexual predator who groomed and took advantage of his young victims.  Given these circumstances, we cannot say that the district court abused its discretion.  Accordingly, Hubbard's sentence will not be disturbed.

## CONCLUSION

[¶ 31]  The mere submission of a Victim Impact Statement and PSR that contains statements from individuals who may be beyond those affected by the charged crimes, does not, without more, constitute a procedural error in sentencing or prosecutorial misconduct.  Additionally, a review of the record reveals that Hubbards sentence was not disproportionate when compared to the extent of his crimes.