# IN THE SUPREME COURT, STATE OF WYOMING

# 2023 WY 11

### OCTOBER TERM, A.D. 2022

### January 31, 2023

MATTHEW JUSTIN OLSON,

Appellant
(Defendant),

v.

S-22-0159

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Uinta County*
*The Honorable Joseph B. Bluemel, Judge*

*Representing Appellant:*
> Office of the State Public Defender: Diane Lozano, Wyoming State Public Defender; Kirk A. Morgan, Chief Appellate Counsel.

*Representing Appellee:*
> Bridget Hill, Wyoming Attorney General; Jenny L. Craig, Deputy Attorney General; Kristen R. Jones, Senior Assistant Attorney General.

*Before FOX, C.J., and KAUTZ, BOOMGAARDEN, GRAY and FENN, JJ.*

NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.

**FOX, Chief Justice.**

[¶1]    Matthew Justin Olson was convicted of two counts of felony domestic battery. He claims the district court improperly admitted uncharged misconduct evidence without proper notice and a Wyoming Rule of Evidence 404(b) hearing. The admission of the evidence was error, but finding no prejudice, we affirm.

## *ISSUE*

[¶2]    The dispositive issue is whether Mr. Olson was prejudiced by the admission of uncharged misconduct evidence without notice and a W.R.E. 404(b) hearing.

## *FACTS*

[¶3]    On April 17, 2020, Mr. Olson's then-wife, SK, requested a civil standby while she removed her belongings from Mr. Olson's Fort Bridger, Wyoming home. She also requested a welfare check because she was concerned Mr. Olson might hurt himself. Two officers from the Uinta County Sheriff's Department, Deputy Shawn Robinson and Sergeant Travis Gregory, responded to the call. As SK placed her belongings in her vehicle's trunk, Deputy Robinson noticed a bruise on her left bicep, just above the elbow joint, and asked her about it. SK did not want to say anything in front of Mr. Olson so she shook her head and told them "no."

[¶4]    One of the officers suggested SK meet them at another location to discuss the bruise, and she agreed. SK told Deputy Robinson that she got the bruise two to three days earlier, and he took photos of the bruise. She testified at trial:

> Q.    And can you identify when you got this bruise on your arm?
>
> A.    I want to say it was two to three days prior to this incident. He was trying to leave in my car. And that's my vehicle that I worked hard to pay for, and I didn't want anything to happen to it because he drives recklessly. And so, I didn't want to let him in the car. And I was like holding the door shut and stuff. And I think I had the key hidden in my boot to where he couldn't get into it. And it started a fight. And so, he bit me on the arm as we were standing out there fighting.
>
> Q.    So, this bruise is from him biting you?
>
> A.    Yes.

1

[¶5]    On May 4, 2020, at approximately 1:00 in the morning, Mr. Olson called SK and asked her to come see him and bring cigarettes. When SK arrived, Mr. Olson was sitting on the porch, and she sat next to him. They smoked and got along for a time, and then he accused her of cheating on him and spit in her face. She went to her vehicle and was able to get in it, but Mr. Olson blocked her from closing the door. He demanded her cell phone and when she refused, he leaned into the vehicle and over her and searched her belongings on the passenger seat. He had his back to her, and when she continued to argue with him, he elbowed her more than once in the chest, knocking the air out of her. SK wanted to get someone's attention, so she honked the vehicle's horn.

[¶6]    When Mr. Olson was unable to locate SK's cell phone, he got out of the vehicle and told her to get out of the car. When she refused, he tried pulling her out of the vehicle while she held onto the steering wheel. He continued pulling and ripped her sweatshirt down the middle. He then grabbed her by her hair, pulled her from the vehicle, and pinned her to the ground. SK began screaming as loud as she could, and he shoved his fingers down her throat. She could not breathe, so she bit him, and when he removed his fingers, she started screaming again.

[¶7]    When SK started to scream again, Mr. Olson bit her ear. This hurt badly enough that SK thought he bit through her ear, and she stopped screaming and told him where the cell phone was. When he got off her, she ran toward a house across the street, but Mr. Olson caught up to her and pushed her down again. He told her to come back to the house and begged her not to do anything about the fight, and she agreed. As he started walking back toward the home, she ran into a community of trailers and hid behind a shed.

[¶8]    A neighbor heard the car horn honking and the hollering, saw Mr. Olson pull SK from the vehicle by her hair, and called law enforcement. Law enforcement arrived, and SK reported what had happened. SK was taken to a hospital by ambulance for treatment of her injuries.

[¶9]    The State charged Mr. Olson with one count of felony domestic battery (third or subsequent offense) for the April 2020 biting incident, and one count of felony domestic battery (third or subsequent offense) for the May 4, 2020, incident. After Mr. Olson was arraigned, the district court issued a scheduling and discovery order. The order directed the State to, within thirty days, provide Mr. Olson notice of any W.R.E. 404(b) evidence it intended to use at trial. The State provided no such notice.

[¶10]   Despite having provided no notice that it intended to use W.R.E. 404(b) evidence at trial, the State told the jury in its opening statement of an uncharged incident involving an alleged jabbing with a pencil.

Through the course of communication with Officers Robinson – Deputies Robinson and Gregory in that April time frame, it was disclosed hesitantly from [SK] that there had been acts against her, specifically jabbing her in her abdomen and pelvic area with a pencil, and then later, that she had, in fact, been trying to prevent Mr. Olson from taking her only vehicle, and he had bitten her on her arm.

[¶11]   It then elicited the following testimony from SK, without objection, about the same uncharged incident:

> Q.     On April 17th, did you describe any other incident that had occurred with Mr. Olson in that time frame?
>
> A.     Yes. I remember putting my son to sleep. And as soon as he was in his bedroom, I had went into the living room and sat on our couch. And he started coming in on me saying that I was cheating on him and that I was a whore, and he would get in my face. But that day I remember him sitting next to me, and then I think I said something he didn't like. And then at that point he had straddled me, and he had a mechanical pencil in his hand, and he had stabbed me in my right side a couple of times. But like it didn't hurt as bad. But then he stabbed me in my crotch area, and that hurt. And I told him that I didn't want to do this. I'm like, I'm not doing it. And I remember pushing him off at one point. And then he stood up and like [he] grabbed my crotch area as well really hard. And that was very painful.

[¶12]   A jury found Mr. Olson guilty of both charged counts of felony domestic battery. The district court sentenced him to a prison term of four to eight years on the first count, and five to nine years on the second, to be served consecutively. Mr. Olson timely appealed to this Court.

## DISCUSSION

I.     *Because the State failed in its obligation to provide notice of the W.R.E. 404(b) evidence it intended to use at trial, the admission of the evidence was error, but our review is confined to a determination of whether the error was prejudicial.*

[¶13]   "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith." W.R.E. 404(b). "A core principle of Wyoming Rule of Evidence 404(b) is that the defendant in a criminal case

3

should not be convicted because he is an unsavory person, nor because of past misdeeds, but only because of his guilt of the particular crime charged." *Jackson v. State*, 2021 WY 92, ¶ 10, 492 P.3d 911, 915 (Wyo. 2021) (cleaned up) (quoting *Blanchard v. State*, 2020 WY 97, ¶ 18, 468 P.3d 685, 691 (Wyo. 2020)). To guard against the misuse of W.R.E. 404(b) evidence, also known as uncharged misconduct evidence, we have a well-established and familiar procedure that must be followed if the State wishes to use such evidence at trial.

> When a defendant files a pretrial demand for notice of the State's intent to introduce uncharged misconduct evidence, the State must identify the evidence. The district court then must hold a hearing in which the State offers a relevant and proper purpose for admissibility under Rule 404(b) and explains why the evidence is more probative than unfairly prejudicial. In that hearing, the district court must then conduct an exacting analysis of the *Gleason* factors:
>
> (1) the evidence must be offered for a proper purpose; (2) the evidence must be relevant; (3) the probative value of the evidence must not be substantially outweighed by its potential for unfair prejudice; and (4) upon request, the trial court must instruct the jury that the similar acts evidence is to be considered only for the proper purpose for which it was admitted.

*Mitchell v. State*, 2020 WY 142, ¶ 22, 476 P.3d 224, 233 (Wyo. 2020) (cleaned up).[1]

[¶14] Despite our established mandatory process, we have observed that "the State continues to disregard the requirement to provide 404(b) notice." *Id.* at ¶ 28, 476 P.3d at 235. And we have repeatedly explained the difficulty this creates in our review. *Id.* at ¶ 21, 476 P.3d at 232. If the State fails to provide the required 404(b) notice, the district court has no opportunity to conduct a *Gleason* analysis, and we have no basis on which to review its exercise of discretion. *Id.* Under those circumstances, the admission of the evidence is error, but our analysis is "constrained to the question of prejudice." *Id.* (citing *Blanchard*, 2020 WY 97, ¶ 20, 468 P.3d at 692); *see also Broberg v. State*, 2018 WY 113, ¶ 19, 428 P.3d 167, 172 (Wyo. 2018).

---

[1] In *Gleason v. State*, decided over twenty years ago, we emphasized the need to adhere to our previously adopted process and factors for determining the admissibility of W.R.E. 404(b) evidence. 2002 WY 161, ¶ 27, 57 P.3d 332, 342 (Wyo. 2002) ("[T]his is a required process."). We have since frequently used the terms *Gleason* hearing, *Gleason* factors, and *Gleason* analysis when discussing the admissibility of 404(b) evidence.

[¶15]   In the usual case in which we have taken this approach, the defense has made a pretrial demand for notice of the State's intent to introduce uncharged misconduct evidence, and the State has failed to provide the required notice. We treat the pretrial demand as an objection to any unnoticed 404(b) evidence regardless of whether the defendant objects at trial. *Blanchard*, 2020 WY 97, ¶ 19, 468 P.3d at 692 (quoting *Broberg*, 2018 WY 113, ¶ 16, 428 P.3d at 171); *see also Howard v. State*, 2002 WY 40, ¶ 23, 42 P.3d 483, 491 (Wyo. 2002) ("We now hold that where a defendant files a pretrial demand for notice of intent to introduce evidence under W.R.E. 404(b), the same shall be treated as the making of a timely objection to the introduction of such evidence.").

[¶16]   In this case, however, Mr. Olson neither demanded notice of the State's intent to introduce uncharged misconduct evidence nor objected to its admission at trial. Nonetheless, the State does not suggest a waiver of Mr. Olson's objection or a different approach to our review, and we likewise see no reason to treat this situation differently. First, the incident the State asked SK to testify to was clearly misconduct. Second, because the reported incident was detailed in the probable cause affidavit attached to the charging document, the State could not claim the response to its question surprised it. *See Mitchell*, 2020 WY 142, ¶ 23, 476 P.3d at 233 (distinguishing cases where State "could plausibly argue it was surprised by" testimony). The district court ordered the State to provide Mr. Olson notice of its intent to use 404(b) evidence at trial, and Mr. Olson could reasonably assume the State did not intend to rely on such evidence when it failed to provide the required notice. Under these circumstances, we consider Mr. Olson's objection preserved and will review for prejudice.

[¶17]   That said, we caution prosecutors, as we have before, that they should not view this as an invitation to bypass our long-established W.R.E. 404(b) procedure in favor of a harmless error review. Prosecutors have an ethical obligation to comply with the mandated procedure. *Mitchell*, 2020 WY 142, ¶ 28, 476 P.3d at 235 (quoting *Blanchard*, 2020 WY 97, ¶ 20 n.2, 468 P.3d at 692 n.2). They also risk claims of prosecutorial misconduct for failure to provide the required notice. *Id.* (citing *Kidwell v. State*, 2012 WY 91, ¶¶ 9-15, 279 P.3d 540, 543-45 (Wyo. 2012)).

## II.   *Mr. Olson was not prejudiced by admission of the unnoticed W.R.E. 404(b) evidence.*

[¶18]   "An error is prejudicial when there is a reasonable probability that the result would have been more favorable to the defendant had the error not occurred." *Gilbert v. State*, 2022 WY 62, ¶ 38, 509 P.3d 928, 939 (Wyo. 2022) (quoting *Mitchell*, 2020 WY 142, ¶ 21, 476 P.3d at 232). "In determining whether a defendant was prejudiced, we review the entire record." *Klingbeil v. State*, 2021 WY 89, ¶ 44, 492 P.3d 279, 289 (Wyo. 2021) (quoting *Hathaway v. State*, 2017 WY 92, ¶ 33, 399 P.3d 625, 634-35 (Wyo. 2017)).

[¶19]   Mr. Olson testified at trial to a different version of what occurred between SK and him, and the jury's verdict therefore came down to whose version it believed. As to the April 2020 incident, Mr. Olson denied biting SK. He testified he saw the bruise on her arm and asked her about it, and she told him she slammed her arm in the car door. As to the May 2020 incident, he testified that she was upset about their breakup, was threatening to hurt herself, and told him she would rather be dead or see him in prison than see him with another woman. He then testified:

> And she had a razor blade in her hand. She was sitting in a car. And when I seen it, I tried like to reach in and grab the razor blade from her hand. And so, I did reach over her. And I didn't secure her hand enough, and she was kind of trying to fight. And she sliced the side of my face with that razor blade. And I pulled her out of the car trying to take it away to throw it away. And at the same time, she took my prescription bottle of Adderall and tried to swallow all of them. And so, when I laid with her on the ground, I was trying to take the Adderall so that she couldn't swallow them.

[¶20]   We find it unlikely that the State's unnoticed 404(b) evidence prejudiced the credibility contest between Mr. Olson and SK. The pencil incident testimony was brief. The State's mention of the incident in its opening statement was even briefer, and it did not mention it at all in its closing argument. *See Klingbeil*, 2021 WY 89, ¶ 45, 492 P.3d at 289 (that improper statement was not "mentioned again either through testimony or in closing argument" weighed against finding prejudice); *Vinson v. State*, 2020 WY 93, ¶ 29, 467 P.3d 1009, 1015 (Wyo. 2020) (fact that 404(b) evidence was not mentioned in closing weighs against finding of prejudice); *Hathaway*, 2017 WY 92, ¶ 33, 399 P.3d at 634-35 (an important factor is "whether counsel relied on the evidence in argument").

[¶21]   Additionally, defense counsel brought out on cross-examination that SK did not have law enforcement take photographs of any alleged injuries from the pencil incident and she did not mention the injuries when she sought medical treatment after the May 4 incident. It seems unlikely that SK's testimony about an event that she did not initially report, or seek medical attention following, would bolster the credibility of any other allegation she made.

[¶22]   Finally, and most importantly, is the strength of the State's corroborating evidence. *Klingbeil*, 2021 WY 89, ¶ 46, 492 P.3d at 289 ("Perhaps the single most significant factor in weighing whether an error was harmful is the strength of the case against the defendant.") (quoting *Hathaway*, 2017 WY 92, ¶ 33, 399 P.3d at 634-35). The State presented the testimony of a neighbor who knew neither Mr. Olson nor SK. She witnessed the May 4 incident and testified that she heard honking and hollering and saw Mr. Olson drag SK from her car by her hair. Additionally, the State presented photographs of SK's

6

torn sweatshirt, the injury to the back of her head where her hair was torn out, and the bite injury to her ear, none of which was consistent with Mr. Olson's testimony that he pulled her from the vehicle to prevent her from hurting herself.

[¶23] Mr. Olson, seemingly understanding the strength of the evidence corroborating SK's version of the May 4 incident, urges the Court to consider the April and May events separately when determining prejudice. Because we are tasked with reviewing the record in its entirety to determine prejudice, we deny this request. *Klingbeil*, 2021 WY 89, ¶ 44, 492 P.3d at 279. We know from the verdict that the jury did not believe Mr. Olson's explanation of either of the charged incidents. Viewing the record in its entirety, the State's evidence corroborated SK's version of the May 4 events and showed Mr. Olson's version to be implausible. Given the scant mention of the uncharged pencil incident, we believe it likely Mr. Olson's credibility was undermined more by his implausible explanation of the May 4 incident than by the improper 404(b) evidence. We are therefore unable to find a reasonable probability the verdict would have been more favorable to Mr. Olson had the error in admitting the 404(b) evidence not occurred.[2]

[¶24] Affirmed.

---

[2] Mr. Olson also points to the failure of the district court to provide a limiting instruction to guide the jury in its permissible consideration of the 404(b) evidence. He did not, however, request a limiting instruction, and he has not asserted that the failure to provide one was plain error. We therefore do not consider this argument further. *See Mayhew v. State*, 2019 WY 38, ¶ 44, 438 P.3d 617, 631 (Wyo. 2019) (declining to consider adequacy of limiting instruction where defendant did not object and did not present plain error analysis on appeal).