# THE SUPREME COURT, STATE OF WYOMING

## 2024 WY 17

OCTOBER TERM, A.D. 2023

February 2, 2024

CHARLES A. SANTISTEVAN,

Appellant
(Defendant),

v.

THE STATE OF WYOMING,

Appellee
(Plaintiff).

S-22-0229, S-23-0116

*Appeal from the District Court of Albany County*
*The Honorable Tori R.A. Kricken, Judge*

*Representing Appellant:*

Office of the State Public Defender: Diane M. Lozano, State Public Defender; Kirk A. Morgan, Chief Appellate Counsel; H. Michael Bennett, Senior Assistant Appellate Counsel.

*Representing Appellee:*

Bridget L. Hill, Attorney General; Jenny L. Craig, Deputy Attorney General; Kristen R. Jones, Senior Assistant Attorney General; John J. Woykovsky, Senior Assistant Attorney General.

*Before FOX, C.J., and KAUTZ, BOOMGAARDEN, GRAY and FENN, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**FENN, Justice.**

[¶1]    A jury convicted Charles Anthony "Tony" Santistevan of six counts of sexual assault in the first degree, one count of sexual assault in the third degree, and one count of voyeurism.  On appeal, he claims the district court abused its discretion when it allowed the State to introduce evidence pursuant to Wyoming Rules of Evidence (W.R.E.) 404(b) that Mr. Santistevan's sexual relationship with the victim, R.S., began when she was a minor.  We affirm.

## ISSUE

[¶2]    Mr. Santistevan presents a single issue, which we rephase as follows: Did the district court abuse its discretion when it admitted evidence of Mr. Santistevan's relationship with R.S. when she was a minor pursuant to W.R.E. 404(b)?

## FACTS

[¶3]    In 2020, a task force with the Wyoming Department of Criminal Investigation began investigating Mr. Santistevan on unrelated criminal allegations.  During the execution of a search warrant at Mr. Santistevan's residence, law enforcement seized electronics including two laptop computers.  When Special Agent Luke Rippy reviewed the contents of the laptops, he found thumbnails and videos of a nude female who appeared to be unconscious while an individual performed sexual acts on her.  Special Agent Rippy identified the female in the videos as Mr. Santistevan's wife, R.S., and contacted her to ask about the videos.  R.S. told law enforcement she was unaware of the videos, she did not know they existed, and she never consented to the sexual encounters.

[¶4]    Special Agent Rippy obtained an additional search warrant to allow him to review the videos and photos on the laptops more thoroughly.  He found approximately seven videos of R.S. unconscious while Mr. Santistevan performed sexual acts on her, including penetration using a transcutaneous electrical nerve stimulation unit which sends electric shocks into the body for nerve stimulation.  In addition to the seven videos of sexual intrusion while R.S. was unconscious, Special Agent Rippy located four videos of R.S. taking a shower where she appeared to be unaware she was being video recorded.  Special Agent Rippy interviewed Mr. Santistevan and R.S. about the videos.

[¶5]    When Special Agent Rippy asked Mr. Santistevan about the videos, "[h]e stated [R.S.] would take Klonopin to the point where she would pass out [or] go . . . unconscious."  Mr. Santistevan said "[h]e would perform sexual acts on [R.S.] and record it[]" and then the next day they would watch the recordings together.  Mr. Santistevan said they were married at the time the videos were recorded.  He stated he met R.S. when she was approximately 16 to 17 years old, and he was helping her parents redo their roof.  He stated they began dating when R.S. was 18 and going to college.

1

[¶6]    When Special Agent Rippy interviewed R.S., he had her review still photographs from the videos to identify herself, the location of the videos, and determine if it was Mr. Santistevan performing the sexual acts and recording the videos.  During the interview, R.S. became angry and upset.  R.S. informed Special Agent Rippy she had no knowledge of the videos and that she never consented to the sexual acts being performed on her by Mr. Santistevan or to the recordings of the sexual acts.  R.S. further informed Special Agent Rippy she met Mr. Santistevan when she was approximately 14 or 15 years old while waitressing at a café.  R.S. said Mr. Santistevan would come into the café and talk to her about his art.  He gave her his phone number and told her, "If you ever want to come hang out or come look at my art, give me a call."  R.S. stated she went over to Mr. Santistevan's house when she was 15 and they began a sexual relationship.  Mr. Santistevan was approximately 37 years old at the time.  During his investigation, Special Agent Rippy found nude photographs of R.S. on Mr. Santistevan's electronic devices that Mr. Santistevan took when she was 15 years old.

[¶7]    Mr. Santistevan was charged with six counts of sexual assault in the first degree in violation of Wyoming Statute § 6-2-302(a)(iii) (LexisNexis 2016), one count of sexual assault in the third degree in violation of Wyoming Statute § 6-2-304(a)(iii) (LexisNexis 2016) for the sexual intrusion and video recordings of R.S. while she was unconscious, and one count of voyeurism in violation of Wyoming Statute § 6-4-304(b)(i) (LexisNexis 2016) for the shower videos of R.S.  These charges did not include allegations stemming from sexual relations between Mr. Santistevan and R.S. when she was under the age of 18.

[¶8]    Mr. Santistevan filed a demand for the State's intent to use any evidence pursuant to W.R.E. 404(b) at trial.  The State filed its notice of intent and its supplemental notice of intent indicating it intended to introduce several instances of uncharged misconduct or other acts under W.R.E. 404(b).  The State specifically sought to introduce evidence Mr. Santistevan established a relationship with R.S. when she was 14 years old and he was approximately 37 years old, and he engaged in sexual conduct with her on a regular basis while she was under the age of 18.  The State further sought to introduce evidence Mr. Santistevan told R.S. she was not to discuss their relationship when she was a minor because he could go to jail.  The State sought to introduce this evidence under W.R.E. 404(b) for the purposes of plan, course of conduct, and because it went directly to the consent element of the crimes charged.  The district court held a pre-trial *Gleason*[1] hearing on December 28, 2021, and found the evidence was relevant and admissible under W.R.E. 404(b) to show an ongoing scheme or plan and to demonstrate Mr. Santistevan's course of conduct.  The district court further held the evidence developed the facts regarding the

---

[1] A *Gleason* hearing is the required pre-trial hearing to determine the potential admissibility of proposed W.R.E. 404(b) evidence. *See, e.g.*, *Volpi v. State*, 2018 WY 66, ¶ 12, 419 P.3d 884, 889 (Wyo. 2018); *Gleason v. State*, 2002 WY 161, ¶¶ 25–30, 57 P.3d 332, 342–43 (Wyo. 2002).

relationship between R.S. and Mr. Santistevan and established the facts leading up to the alleged nonconsensual sexual conduct.

[¶9]     During the trial, the State introduced statements Mr. Santistevan made to Special Agent Rippy about when he began his relationship with R.S.  The State further introduced R.S.'s testimony regarding when she met Mr. Santistevan, and the café manager's testimony about when R.S. worked at the café and how Mr. Santistevan would come into the café.  R.S. testified to the following regarding the W.R.E. 404(b) evidence:

> Q. And [R.S.], when did you meet Tony?
>
> A. I met Tony in summer of 2011.
>
> Q. And how old were you in the summer of 2011?
>
> A. I was 14, turning 15.
>
> Q.  How old were you when you met Tony?
>
> A.  I was 14.
>
> Q.  And how did you meet Tony?
>
> A.  I was a waitress at a truck stop and he was a patron there.
>
> Q.  And where was this truck stop?
>
> A.  It's in Lusk, Wyoming; called the Outpost Café.
>
> Q.  And so you were a waitress there when you were 14?
>
> A.  Yes.
>
> Q.  And how, I guess, how did you meet him?
>
> A.  He would come into the restaurant and he would draw or play chess, but usually he'd come in there to draw.
>
> Q.  Were you interested in art as well?
>
> A.  Yes.
>
> Q.  Would you talk about art with him?

A.  Yes.

Q.  And how old was Mr. Santistevan when you were 14?

A.  He was either 36 or 37.

Q.  And did your relationship progress with Tony past one of waitress and patron?

A.  Yes.

Q.  What - - how did that happen?

A.  We started to - - well, he would invite me over to his house because I was interested in his artwork.  But then shortly after that, it progressed into a sexual relationship.

Q.  Did you consider yourself dating Tony?

A.  Yes.

Q.  When, about, did you consider yourself dating Tony?

A.  Not the first year but, like, 2012, that fall was when I would consider us to be starting, like, a monogamous dating relationship.

Q.  And how old were you at that time?

A. I was 16.

Q.  And when you were in a dating relationship, at that time with Tony, or even before you considered yourself dating him, did you ever tell anyone that you were seeing Tony?

A.  No, I did not.

Q.  And why not?

A.  Because he told me not to. Because he knew he was going to get in trouble.

Q. And how long did you date Tony?

A. Until we got married.

Q. And when was that?

A. I was 19. . . .

[¶10] After a four-day trial, the jury found Mr. Santistevan guilty on all eight counts. The district court sentenced Mr. Santistevan to 40 to 50 years for count one of sexual assault in the first degree; 20 to 30 years for count two of sexual assault in the first degree to run consecutively to count one; 10 to 20 years for counts three, four, five, and six of sexual assault in the first degree, all to run concurrent to count one; 12 to 15 years for count seven of sexual assault in the third degree to run concurrent to count one; and 12 months to 24 months for count eight of voyeurism to run concurrent to count one. Mr. Santistevan was given 338 days of credit for time served on all eight counts.

[¶11] Mr. Santistevan filed a motion for a new trial pursuant to Wyoming Rules of Appellate Procedure 21 claiming his trial counsel was ineffective. He claimed his trial counsel did not include him during discovery and witness identification and failed to adequately investigate all of the facts and circumstances surrounding R.S.'s testimony. Following a hearing, the district court denied Mr. Santistevan's motion for a new trial. Mr. Santistevan timely appealed the district court's order allowing admission of evidence regarding his relationship with R.S. when she was a minor and its order denying his motion for a new trial due to ineffective assistance of counsel.

## STANDARD OF REVIEW

[¶12] In his appellate brief, Mr. Santistevan raises only the admissibility of the W.R.E. 404(b) evidence and does not challenge the denial of his motion for a new trial for ineffective assistance of counsel. He filed a pretrial demand for notice of the State's intent to introduce evidence under W.R.E. 404(b), so we review the admission of the evidence for an abuse of discretion. *Anderson v. State*, 2022 WY 119, ¶ 11, 517 P.3d 583, 588 (Wyo. 2022) (citing *Barrett v. State*, 2022 WY 64, ¶ 41, 509 P.3d 940, 948 (Wyo. 2022)). "We will not disturb the trial court's determination of the admissibility of evidence unless the court clearly abused its discretion." *Freer v. State*, 2023 WY 80, ¶ 11, 533 P.3d 897, 901 (Wyo. 2023) (quoting *Anderson*, ¶ 11, 517 P.3d at 588). On review, "[w]e need only determine whether the court could have reasonably concluded as it did." *Id.*

## DISCUSSION

[¶13] Mr. Santistevan contends the district court abused its discretion by admitting evidence of uncharged misconduct under W.R.E. 404(b). He challenges the district court's

decision to admit testimony stating he engaged in sexual intercourse with R.S. when she was under the age of 18 and he was in his mid to late 30s. W.R.E. 404(b) governs the admissibility of other acts evidence or uncharged misconduct, stating:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

W.R.E. 404(b).

[¶14]   The admission of other crimes, wrongs, or acts carries the risk of inherent prejudice. *Volpi*, 2018 WY 66, ¶ 12, 419 P.3d at 889 (quoting *Wease v. State*, 2007 WY 176, ¶ 59, 170 P.3d 94, 116 (Wyo. 2007)). Generally, such evidence is not admissible because "the defendant in a criminal case should not be convicted because he is an unsavory person, nor because of past misdeeds, but only because of his guilt of the particular crime charged." *Freer*, 2023 WY 80, ¶ 13, 533 P.3d at 902 (quoting *Olson v. State*, 2023 WY 11, ¶ 13, 523 P.3d 910, 913–14 (Wyo. 2023)); *Volpi*, ¶ 12, 419 P.3d at 889. If the State wishes to use evidence of other crimes, wrongs, or acts at trial, a well-established procedure must be followed. *Freer*, ¶ 13, 533 P.3d at 902 (quoting *Olson*, ¶ 13, 523 P.3d at 914).

> When a defendant files a pretrial demand for notice of the State's intent to introduce uncharged misconduct evidence, the State must identify the evidence. The district court then must hold a hearing in which the State offers a relevant and proper purpose for admissibility under Rule 404(b) and explains why the evidence is more probative than unfairly prejudicial. In that hearing, the district court must then conduct an exacting analysis of the *Gleason* factors:
>
> > (1) the evidence must be offered for a proper purpose; (2) the evidence must be relevant; (3) the probative value of the evidence must not be substantially outweighed by its potential for unfair prejudice; and (4) upon request, the trial court must instruct the jury that the similar acts

evidence is to be considered only for the proper
purpose for which it was admitted.

*Id.* (quoting *Olson*, ¶ 13, 523 P.3d at 914); *see also Gleason*, 2002 WY 161, ¶ 27, 57 P.3d at 342 (discussing the procedures to admit evidence under W.R.E. 404(b)).

[¶15]   We do not apply the *Gleason* analysis anew on appeal. *Mayhew v. State*, 2019 WY 38, ¶ 27, 438 P.3d 617, 624 (Wyo. 2019) (citing *Garrison v. State*, 2018 WY 9, ¶ 20, 409 P.3d 1209, 1215 (Wyo. 2018); *Griggs v. State*, 2016 WY 16, ¶¶ 128–129, 367 P.3d 1108, 1143 (Wyo. 2016)).   Instead, we determine whether there is a legitimate basis for the district court's decision. *Freer*, 2023 WY 80, ¶ 14, 533 P.3d at 902; *Barrett,* 2022 WY 64, ¶ 48, 509 P.3d at 950.   On appeal, Mr. Santistevan must show the district court abused its discretion and did not admit the evidence for a proper purpose under W.R.E. 404(b). *Anderson*, 2022 WY 119, ¶ 15, 517 P.3d at 589 (citing *Barrett*, ¶ 48, 509 P.3d at 950).

[¶16]   The district court held the required hearing, conducted the *Gleason* analysis, and found the evidence of Mr. Santistevan's relationship with R.S. when she was a minor was admissible under W.R.E. 404(b).   It held:

> 32.   While the Court is cognizant of the potential prejudice caused by information that Mr. Santistevan began a sexual relationship with R.S. while she was a minor, the Court concludes that this information is necessary to provide the jury with a complete story as to Mr. Santistevan's access to the alleged victim, his control over her, and his development of a "relationship" that would allow for sexual access (sometimes referred to as "grooming"[2]).
>
> 33.   The Court further agrees with the State that introduction of this evidence is appropriate pursuant to the well-recognized "course of conduct" purpose. *See Leyva v. State*, 2007 WY 136, ¶ 28, 165 P.3d 446, 454 (Wyo. 2007) (explaining that the "course of conduct" purpose refers to misconduct that "forms part of the history of the event or serve to enhance natural development of the facts").   This evidence is relevant to establish the crimes charged because it assists in providing a complete story to the jury, particularly Mr. Santistevan's conduct in developing a controlling relationship with a young

---

[2] "Grooming refers to deliberate actions taken by a defendant to expose a child to sexual material; the ultimate goal of grooming is the formation of an emotional connection with the child and a reduction of the child's inhibitions in order to prepare the child for sexual activity." *United States v. Isabella*, 918 F.3d 816, 833 (10th Cir. 2019) (quoting *United States v. Chambers*, 642 F.3d 588, 593 (7th Cir. 2011)).

and vulnerable female. It develops the facts giving rise to the State's current allegations against Mr. Santistevan, particularly the dynamics of his relationship with R.S., culminating in allegedly forcible and nonconsensual sexual intercourse/intrusion. The Court concludes that Mr. Santistevan's grooming behaviors and history of his relationship with R.S. are relevant to show an ongoing scheme or plan as well as to demonstrate a course of conduct.

[¶17] We have previously recognized evidence of uncharged misconduct is admissible as an exception under W.R.E. 404(b) if it "forms part of the history of the event or serves to enhance the natural development of the facts." *Leyva*, 2007 WY 136, ¶ 28, 165 P.3d at 454 (citing *Bromley v. State*, 2007 WY 20, ¶ 9, 150 P.3d 1202, 1207 (Wyo. 2007); *Blakeman v. State*, 2004 WY 139, ¶ 32, 100 P.3d 1229, 1237 (Wyo. 2004); *Crozier v. State*, 723 P.2d 42, 49 (Wyo.1986)). "[E]vents do not occur in a vacuum and the jury has the right to have the offense placed in its proper setting." *Garrison*, 2018 WY 9, ¶ 27, 409 P.3d at 1217 (quoting *Bromley*, ¶ 21, 150 P.3d at 1209). When evidence is used to explain the parties' relationship, it invokes the proper purpose of the course of conduct between the parties under W.R.E. 404(b). *Id.* The evidence introduced by the State established: 1) Mr. Santistevan met R.S. when she was 14; 2) how their relationship progressed, including his grooming of R.S. when she was a minor; and 3) their sexual relationship. The district court did not abuse its discretion by admitting this evidence under W.R.E. 404(b) for the proper purpose of course of conduct to illustrate the relationship between Mr. Santistevan and R.S. and to enhance the natural development of the facts. *See generally Garrison*, 2018 WY 9, ¶ 29, 409 P.3d at 1217 (finding the other acts evidence demonstrating the relationship between the defendant and the victim prior to the alleged crime illustrated the strained relationship between the parties and allowed the jury to place the charge within the context of the parties' relationship); *Bhutto v. State*, 2005 WY 78, ¶ 24, 114 P.3d 1252, 1263 (Wyo. 2005) (citing *Solis v. State*, 981 P.2d 28, 31 (Wyo. 1999)) (finding prior acts of domestic violence between the defendant and the victim though dissimilar to the alleged crime "help[ed] the jury understand the relationship between the parties").

[¶18] While we find no abuse of discretion in the district court's conclusion that the evidence is admissible to show course of conduct, we have cautioned against relying solely on course of conduct as a basis to admit evidence under W.R.E. 404(b). *Moser v. State*, 2018 WY 12, ¶ 36, 409 P.3d 1236, 1247 (Wyo. 2018). "[W]e recognize the danger that a course of conduct exception, standing alone, could swallow the general rule against admission of 'other crimes, wrongs, or acts,' and we emphasize that it must be linked to another legitimate purpose." *Anderson*, 2022 WY 119, ¶ 25, 517 P.3d at 591 (Wyo. 2022) (quoting *Moser*, ¶ 36, 409 P.3d at 1247). In this matter, we do not have that concern.

[¶19] The district court did not rely solely on the course of conduct exception to admit the evidence of Mr. Santistevan's relationship with R.S. while she was a minor. The district

court admitted Mr. Santistevan's relationship history with R.S. to further show an ongoing scheme or plan by Mr. Santistevan. It found the evidence relevant to illustrate the dynamics of the relationship between Mr. Santistevan and R.S. and to show the jury the complete story about how Mr. Santistevan developed his sexual relationship with R.S. and groomed her for his sexual access from a young age. It further found the evidence showed Mr. Santistevan developed a controlling relationship with R.S., which culminated in the nonconsensual sexual activity that formed the basis for the underlying charges against Mr. Santistevan.

[¶20]   There is a legitimate basis for the district court's decision to admit the evidence of Mr. Santistevan's relationship with R.S. when she was a minor. An essential element of all seven counts of sexual assault Mr. Santistevan was charged with is whether Mr. Santistevan "knows or reasonably should know . . . that [R.S.] has not consented." Wyo. Stat. Ann. § 6-2-302(a)(iii); Wyo. Stat. Ann. § 6-2-304(a)(iii). Mr. Santistevan's defense to all seven sexual assault charges was that R.S. consented to the sexual encounters and recordings of these sexual acts. As Mr. Santistevan's counsel told the jury in his opening statement "[t]he evidence in this case [came] down to one issue: Consent."

[¶21]   In *Watters*, we held the district court did not abuse its discretion when it found an alleged victim's testimony regarding prior incidents of sexual intercourse occurring between her and the defendant along with sexually explicit photographs the defendant took of the victim and himself were admissible under W.R.E. 404(b). *Watters v. State*, 2004 WY 155, ¶¶ 19–28, 101 P.3d 908, 916–19 (Wyo. 2004). The defendant was the foster parent, guardian, and conservator of the victim who was over the age of 21 and in a group home. *Id.* at ¶ 3, 101 P.3d at 911–12. One day the defendant visited the victim in the group home and engaged in sexual intercourse with her. *Id.* at ¶¶ 3–5, 101 P.3d at 911–12. The State charged the defendant with one count first-degree sexual assault, or, in the alternative one count of second-degree sexual assault. *Id.* at ¶ 6, 101 P.3d at 912. At trial, the defendant claimed the sexual relationship with the victim was consensual. *Id.* at ¶ 27, 101 P.3d at 918–19. On appeal, we upheld the district court's decision to admit evidence of prior incidents of sexual intercourse under W.R.E. 404(b) for the proper purposes of course of conduct and bolstering the victim's credibility. *Id.* at ¶¶ 19–28, 101 P.3d 908, 916–19. We found the evidence went directly to an essential element of the charged offense regarding whether the defendant used his authority over the victim to cause submission. *Id.* at ¶¶ 25–27, 101 P.3d at 918–19. We agreed with the district court that the evidence went directly to the State's theory that the motivation for the defendant's relationship with the victim was for sexual gratification, and also established the charged incident evolved from the relationship and prior incidents the defendant had with the victim. *Id.* at ¶¶ 24–27, 101 P.3d at 918–19.

[¶22]   Here, similar to the defense's theory in *Watters*, the issue for the jury to decide was whether R.S. consented to the sexual encounters and video recordings made by Mr. Santistevan. The evidence of Mr. Santistevan's relationship with R.S. when she was a

minor, including their sexual relationship, illustrated: 1) the relationship between R.S. and Mr. Santistevan; 2) placed the allegations into the context of the parties' relationship; 3) went directly to the parties' theories of the case, including R.S.'s credibility; and 4) was relevant to an essential element of the charged crimes. The evidence of R.S.'s and Mr. Santistevan's relationship from the time R.S. was a minor provided significant probative value under the circumstances of this case. The district court did not abuse its discretion by admitting the evidence under W.R.E. 404(b). *See generally Garrison*, 2018 WY 9, ¶¶ 29–32, 409 P.3d at 1217–18 (finding evidence the victim obtained a protection order and had separated from the defendant admissible for the course of conduct of the defendant and establishing motive and identity); *Watters*, 2004 WY 155, ¶¶ 19–28, 101 P.3d at 916–19.

## CONCLUSION

[¶23] The district court did not abuse its discretion when it admitted evidence of Mr. Santistevan's relationship with R.S. when she was a minor pursuant to W.R.E. 404(b) at trial. We affirm.